WORSCH, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 184.   Argued March 6, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 201.)

For the appellant there was a brief by *Sigman, Sigman & Shiff,* and oral argument by *Samuel Sigman* and *Thomas J. Janssen,* all of Appleton.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondents Seymour Flour Mill, Robert H. Mill, and Hartford Accident & Indemnity Company there

was. a brief by *Welsh, Trowbridge, Bills, Planert & Gould*, and oral argument by *Vance M. Waggoner*, all of Green Bay.

CONNOR T. HANSEN, J. Appellant was employed by the defendant-respondent, Seymour Flour Mill, from July 3, 1942, until December 31, 1963, when he was forced to terminate his employment because of emphysema, at the age of forty-nine. Appellant filed a claim for workmen's compensation on the grounds the emphysema was an industrial disease caused by and related to his employment at the mill. On May 4, 1966, a hearing was held before an examiner, after which the following findings of fact were made:

". . . that he had considerable exposure to dust and fumes while mixing and grinding feed; that the applicant sustained occupational disease injury in the nature of pulmonary emphysema while performing services growing out of and incidental to his employment; that such injury arose out of his employment with the respondent; that as a result of his injury, applicant sustained permanent total disability as of December 31, 1963; . . ."

Respondent-employer petitioned for a review and on September 8, 1966, the ILHR Department set aside the findings of fact and order:

". . . that he sustained injury in the nature of an occupational disease, emphysema, while performing services growing out of and incidental to his employment for the respondent; that injury arose out of the employment; that as a result of the injury, applicant was temporarily totally disabled from December 31, 1963 to May 4, 1966, the date of hearing, . . . that the extent of disability following May 4, 1966, cannot be determined from the present record and reservation is made; that applicant may require further medical treatment and reservation is made to issue such further awards as may be warranted; . . ."

Pursuant to the foregoing findings an interlocutory order was entered which provided that the applicant shall continue to be totally disabled and that reservation is made as set forth in the findings of fact.

The findings and order of the ILHR Department were affirmed by the Dane county circuit court and judgment entered on June 14, 1967. No appeal was taken from that judgment to this court.

Further hearings were held on May 8, 1968, and July 23, 1968, before separate examiners. The examiners joined in entering findings of fact and an order dated August 12, 1968, dismissing applicant's petition.

### "Findings of fact

"That such disability as the applicant may have after May 4, 1966, is not proximately caused by or aggravated by his employment by the employer, but is due to unrelated causes; that, therefore, the respondent and its insurance carrier are not liable for the alleged disability or medical expense sustained or incurred after May 4, 1966.

"Now, therefore, this

### "Order

"That the application for payment of medical expense incurred after May 4, 1966, the temporary total disability compensation for periods after May 4, 1966, and as to eligibility for permanent disability is hereby dismissed."

These findings and order were affirmed by the ILHR Department as a whole on October 11, 1968.

On June 5, 1969, judgment was entered in the Dane county circuit court affirming the October 11, 1968 order of the ILHR Department and from this judgment Worsch has appealed.

Three issues are raised on this appeal: (1) Was the September 8, 1966, order of the ILHR Department final and therefore res judicata as to the issue of permanent disability; (2) does due process require the record in this case to reflect that the ILHR Department consulted with examiners or had adequate notes from them re-

garding the demeanor of witnesses; and (3) were the findings of fact supported by credible evidence.

*Res judicata.*

Appellant contends that the ILHR Department's findings of fact and interlocutory order of September 8, 1966, was final in all respects except as to those items specifically reserved, namely, extent of disability after May 4, 1966, and future medical expense. The September 8, 1966, findings state in part: "applicant was temporarily totally disabled from December 31, 1963, to May 4, 1966, . . . that the extent of disability following May 4, 1966, cannot be determined from the present record and reservation is made. . . ." Appellant claims use of the statement "extent of disability" rather than language such as "extent of disability, if any" or "reservation is made to determine if there is future disability" shows that *some* permanent disability was found to exist after May 4, 1966, by the ILHR Department. Appellant also contends this interpretation is supported by the following language in the order, ". . . that applicant shall continue to be totally disabled. . . ." Therefore, since the September 8, 1966, findings and order were adjudicated in circuit court and not appealed, appellant argues the finding of permanent disability is res judicata.

Appellant's argument is premised on the ILHR Department finding some permanent disability after May 4, 1966; however, this is an erroneous interpretation of the September 8, 1966, findings. In *Gallenberg v. Industrial Comm.* (1955), 269 Wis. 40, 42, 43, 68 N. W. 2d 550, this court stated:

"The commission's order was a final determination of the rights of the parties. It is interlocutory only in the sense that jurisdiction was retained to determine the amount of Dr. McCabe's bill. When plaintiff filed his application with the commission there was presented the entire claim, that for both temporary and permanent dis-

ability. *State ex rel. Watter v. Industrial Comm.* 233 Wis. 48, 287 N. W. 692; *Christnovich v. Industrial Comm.* 257 Wis. 235, 43 N. W. (2d) 21. The finding that there was temporary disability and the failure or refusal to find the extent of permanent disability must be construed as a finding that there was no permanent disability. *Christnovich v. Industrial Comm., supra; Tadin v. Industrial Comm.* 265 Wis. 375, 61 N. W. (2d) 309."

Thus, when temporary disability has been awarded, the failure to find the "extent" of liability would normally mean that no permanent disability has been found. It follows that the findings of the ILHR Department cannot be bent to fit appellant's interpretation of permanent disability after May 4, 1966. The failure to find the extent of liability while specifically reserving that issue was tantamount to reserving the issue of permanent disability. There was, therefore, no affirmation or adjudication by the circuit court as to permanent disability and res judicata did not attach to that part of the findings and interlocutory order so reserved. It is well established that interlocutory orders of the ILHR Department are not res judicata. *American Motors Corp. v. Industrial Comm.* (1965), 26 Wis. 2d 165, 132 N. W. 2d 238.

*Due process.*

All the medical witnesses agreed that appellant is disabled but did not agree whether the cause of disability was his employment. Medical witnesses testifying on behalf of respondent-employer and respondent-insurer expressed the opinion that appellant's condition was not related to his employment, while medical witnesses for appellant testified that his condition was so related. From this, appellant concludes the credibility of the medical witnesses is a substantial element in this case and, therefore, it was the duty of the ILHR Department to consider demeanor evidence in making its decision.

It is further contended that there is no such evidence in the record.

The rule relied on by Worsch is found in *Braun v. Industrial Comm.* (1967), 36 Wis. 2d 48, 57, 153 N. W. 2d 81:

". . . In situations where an examiner hears conflicting testimony and makes findings based upon the credibility of witnesses, and the commission thereafter reverses its examiner and makes contrary findings, the record should affirmatively show that the commission had the benefit of the examiner's personal impressions of the material witnesses. This may take the form of either adequate notes of the examiner or personal consultation with him. The demands of due process cannot be satisfied with anything less." [1]

The two reasons for the requirements outlined in *Braun* are not relevant to this action. First, the special circumstances mentioned in *Braun* are not present since the ILHR Department did not reverse the order of the examiners. Secondly, the ILHR Department had the benefit of the examiners' impressions. Upon service of an amended complaint the ILHR Department filed a supplemental return consisting of the memoranda of the examiners. On September 6, 1968, one examiner wrote:

"The examiner is aware of the finding of 100% P. T. D. in the earlier Order. *However,* based on medical testimony now available, it appeared that his disability condition after May 4, 1966, was not incidental to his employment or arose out of his employment and was due to other causes,— (asthma & allergy)."

And on September 26, 1968, the other examiner wrote:

"The issue here is primarily a medical one & the examiners concluded from the testimony of the doctors that the A's condition following 5/4/66 (up to which date compensation was awarded) was not proximately

---

[1] *See also Burton v. ILHR Department* (1969), 43 Wis. 2d 218, 168 N. W. 2d 196, 170 N. W. 2d 695.

caused by his employment. A's condition was *infectious* asthma & bronchitis. *His sensitivity (asthma) continued even when removed from exposure to mill dust at R's plant."*

Demeanor may play a very material part in determining the weight to be given testimony of medical witnesses in certain cases; however, in this case one examiner stated the issue to be "primarily a medical one" and both examiners were able to agree on the resolution of that issue. There is nothing to indicate that demeanor was significant in determining the credibility of the witnesses, and we are obliged to find that the determination of the ILHR Department which affirmed the findings and order of the examiners was entirely proper.

### Credible evidence.

The stage for the medical dispute was set in a letter dated January 13, 1966, from Dr. John Russo, one of the doctors who testified for the applicant, to Dr. F. O. Kuehl.

Dr. Russo wrote:

". . . I told the lawyer that if we could establish some allergy component from the enclosed list of grain dust then I don't think we would have too much trouble in winning the case.

"At present, we have a good case as far as aggravation in employment from continual exposure to grain dust for many years which often is a valid enough reason for compensation. The gist of the whole case would rest upon establishing a causal relationship to his employment from the grain dust."

On May 8, 1968, Dr. John Russo and Dr. Frederick Kuehl testified on appellant's behalf before one examiner. On July 23, 1968, Dr. A. O. Sander and Dr. Howard J. Lee testified for respondents in a hearing before another examiner. It was the opinion of Dr. Lee, a specialist in internal medicine, that appellant had chronic

infective asthma, unrelated to his employment, and that appellant's emphysema was not caused by employment but was secondary to the asthma. Dr. A. O. Sander, a specialist in diseases of the chest, was of the opinion that appellant's asthma was due to chronic bronchial infection unrelated to his employment. Both Dr. Lee and Dr. Sander stated that if appellant's condition had been caused by employment, it would have improved after leaving, but instead it had become progressively worse. The record also includes a report from Dr. Charles E. Reed, University Hospitals, Madison, to Dr. Russo, stating that tests he made for appellant's allergic reaction to grain and mill dust were negative. The basic question then becomes whether there is credible evidence to support the finding that the disability after May 4, 1966, is due to causes unrelated to the employment.

Appellant contends the findings of the ILHR Department are based on the testimony of Dr. Sander and Dr. Lee and this evidence is not credible. We have reviewed and considered the record and each of the points raised by appellant which are claimed to illustrate this contention. We do not consider it necessary to set forth each of the arguments so advanced in detail, and we are of the opinion they do not render the medical testimony of the two doctors incredible, but attack the weight to be given to such evidence.

It is not the function of this court to resolve and weigh conflicting medical evidence.

" 'The weight and credibility to be given medical witnesses in a workmen's compensation case are for the Industrial Commission. The rule as stated in *Milwaukee E. R. & T. Co. v. Industrial Comm.* (1951), 258 Wis. 466, 475, 46 N. W. (2d) 198, is: "It is a well-established rule that the commission's finding on disputed medical testimony is conclusive. *A. D. Thomson & Co. v. Industrial Comm.* (1928), 194 Wis. 600, 602, 217 N. W. 327; *General A. F. & L. Assur. Corp. v. Industrial Comm.* (1937), 223 Wis. 635, 641, 271 N. W. 385; *Crucible Steel Casting Co. v. Industrial Comm., supra* [(1936), 220

Wis. 665, 265 N. W. 665] (p. 669)." See also *Borden Co. v. Industrial Comm., supra; Borum v. Industrial Comm.* (1959), 6 Wis. (2d) 168, 93 N. W. (2d) 860.'
"This is true even though this court might have ruled differently had it been in the position of the Industrial Commission." *Carr v. Industrial Comm.* (1964), 25 Wis. 2d 536, 539, 131 N. W. 2d 328.

In the recent case of *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 547, 548, 169 N. W. 2d 73, we reaffirmed the test as properly being whether there is any credible evidence. We explained that test by pointing out:

". . . The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law. This is clearly not the same as a reviewing court's weighing conflicting credible evidence to determine what shall be believed. That is solely within the province of the administrative agency." *See also Burks v. ILHR Department* (1969), 45 Wis. 2d 1, 5, 172 N. W. 2d 27.

The ILHR Department chose to resolve the issue of causation against the appellant, and it did so on the basis of credible medical evidence, and, therefore, those findings must be affirmed by this court.

*By the Court.*—Judgment affirmed.