# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP203 |
| COMPLETE TITLE: | Xcel Energy Services, Inc.,<br>　　　　Petitioner-Appellant-Petitioner,<br>　　v.<br>Labor and Industry Review Commission<br>and John Smoczyk,<br>　　　　Respondents-Respondents. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 339 Wis. 2d 413, 810 N.W.2d 865
(Ct. App – 2012 Published)
PDC No: 2012  WI App 19

| | |
|---|---|
| OPINION FILED: | July 11, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 11, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Chippewa |
| JUDGE: | James M. Isaacson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed).<br>BRADLEY, J., joins Part I of concurrence. |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner-appellant-petitioner, there were briefs by *Timothy S. Crom*, *Matthew P. Bandt* and *Jardine, Logan & O'Brien, P.L.L.P.*, Lake Elmo, MN, and oral argument by *Matthew P. Bandt*.

For the respondents-respondents, the cause was argued by *Richard Briles Moriarty*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP203
(L.C. No. 2010CV362)

STATE OF WISCONSIN      :      IN SUPREME COURT

Xcel Energy Services, Inc.,

    Petitioner-Appellant-Petitioner,

  v.

Labor and Industry Review Commission and John Smoczyk,

    Respondents-Respondents.

**FILED**

**JUL 11, 2013**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Reversed and remanded.*

¶1 PATIENCE DRAKE ROGGENSACK, J. This is a review of a published opinion of the court of appeals[1] that reversed a decision of the Chippewa County Circuit Court,[2] which in turn had affirmed an order of the Labor and Industry Review Commission (LIRC) awarding worker's compensation benefits to John Smoczyk for his permanent total disability that resulted

---

[1] Xcel Energy Servs., Inc. v. LIRC, 2012 WI App 19, 339 Wis. 2d 413, 810 N.W.2d 865.

[2] The Honorable James M. Isaacson presided.

from a work-related injury during his employment by Xcel Energy Services, Inc. Three issues are presented. First, Xcel claims that the court of appeals erred when it concluded that the circuit court was required to dismiss Xcel's complaint for lack of competency based on Xcel's failure to name its insurer, ACE American Insurance Co., as an "adverse party," pursuant to Wis. Stat. § 102.23(1)(a) (2011-12).[3] Second, Xcel raises two challenges to the merits of LIRC's decision, claiming that: (1) there was not credible and substantial evidence in the record to support LIRC's finding that Smoczyk was entitled to permanent total disability benefits under the odd-lot doctrine; and (2) LIRC acted without authority or in excess of its powers[4] when it awarded Smoczyk disability benefits after an administrative law judge (ALJ) had ordered that further medical procedures were required to determine whether Smoczyk was permanently and totally disabled.

¶2 We conclude that the circuit court had competency to adjudicate Xcel's complaint, notwithstanding Xcel's omission of ACE, because ACE was not an "adverse party" for purposes of Wis. Stat. § 102.23(1)(a). In reaching this conclusion, we reaffirm our decision in Miller Brewing Co. v. LIRC (Miller II), 173

---

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 edition unless otherwise indicated.

[4] Xcel's argument on this point, founded on Wis. Stat. § 102.23(1)(e)1., amounts to a claim that LIRC did not have the authority to decide Smoczyk's claim contrary to the order of one of the ALJs. For ease of reference, we refer to Xcel's argument on this point as claiming that LIRC "exceeded its authority."

Wis. 2d 700, 713–18, 495 N.W.2d 660 (1993), and conclude that an "adverse party" under § 102.23(1)(a) is a party "in whose favor" LIRC's award or order was made, or a party "whose interest is in conflict with the modification or reversal" of LIRC's order or award. We also now withdraw language that creates a definition of "adverse party" proffered by the court of appeals in Miller Brewing Co. v. LIRC (Miller I), 166 Wis. 2d 830, 842, 480 N.W.2d 532 (Ct. App. 1992), that is not in accord with our definition.[5]

¶3 Additionally, rather than remanding to the court of appeals to review the merits of Xcel's complaint, which the court of appeals did not review, we affirm LIRC's award in favor of Smoczyk. First, based on the evidence of record, LIRC's finding that Smoczyk is entitled to permanent total disability benefits on an odd-lot basis is supported by credible and substantial evidence. Second, Xcel has not demonstrated that LIRC exceeded its authority in reaching a conclusion that departed from an ALJ's order in Smoczyk's worker's compensation proceeding before the Department of Workforce Development (DWD). Therefore, we reverse the decision of the court of appeals and we remand with instructions to affirm LIRC's decision awarding permanent total disability benefits to Smoczyk.

---

[5] After oral argument, LIRC submitted a letter to this court, suggesting that we encourage the Worker's Compensation Advisory Council to propose amendments to Wis. Stat. § 102.23 for the Legislature's consideration, clarifying which parties are required to be included for judicial review under § 102.23. To the extent that either the Commission or Legislature conclude that further clarification of that language is necessary, we rest assured that they will proceed accordingly.

I.  BACKGROUND

¶4   On January 25, 2007, Smoczyk, while employed by Xcel as an ironworker, injured his back.  After taking a short break to rest his back, Smoczyk returned to work and finished his shift.[6]

¶5   After experiencing significant pain over the weekend, Smoczyk returned to work the following Monday and notified his supervisor about the back injury.  On February 1, 2007, Smoczyk met with Dr. Jane Stark, accompanied by a representative of Xcel, Scott Crotty.  Dr. Stark diagnosed Smoczyk with a back sprain/strain, which she concluded could reasonably be related to his work activities.

¶6   Soon thereafter, Smoczyk began undergoing physical therapy, but in late February 2007, believing that Dr. Stark's recommendations were not in his best interest, Smoczyk began treatment with Dr. Joseph Hebl.  Dr. Hebl continued the recommendation for physical therapy and imposed light-duty restrictions.  Soon after Dr. Hebl imposed light-duty restrictions, Smoczyk was laid off as part of Xcel's seasonal layoffs; however, Smoczyk was never rehired and has not worked since being laid off in February 2007.

¶7   Although Smoczyk experienced some relief during the course of physical therapy, he returned to Dr. Hebl in May 2007, and reported that his back pain had worsened.  Over the course

---

[6] Smoczyk worked four ten-hour days, and the injury occurred on a Thursday, the end of Smoczyk's work week.

of the next two months, Smoczyk reported varying pain levels for his back, while also reporting new pain radiating down both legs to the bottom of his feet. Dr. Hebl suggested that Smoczyk consider a consultation at the Pain Clinic of Northwestern Wisconsin, where he might obtain more aggressive treatment, including steroid injections or possibly spinal surgery. Smoczyk expressed some concern that such invasive treatments might exacerbate his condition or create new pain.

¶8 Notwithstanding his concerns, Smoczyk visited the Pain Clinic on July 13, 2007, and met with Dr. Mark Schlimgen. Dr. Schlimgen recommended further physical therapy, as well as an epidural steroid injection intended to address Smoczyk's lower back pain. Smoczyk received epidural steroid injections on July 13 and 27, both of which provided some relief. Additionally, Smoczyk continued to attend physical therapy treatments and to practice exercises at home. Smoczyk also continued to meet with Dr. Hebl, who maintained the light-duty work restrictions.

¶9 In early September 2007, Dr. Hebl suggested that Smoczyk apply for Social Security Disability benefits, based on Dr. Hebl's opinion that Smoczyk would be unable to return to work, and that he would be unable to pursue any other gainful employment. Later that month, Smoczyk met with an independent medical examiner, Dr. John Dowdle, at the request of Xcel. Dr. Dowdle opined that the work injury in January 2007 exacerbated a preexisting spinal condition, and that the treatments he had

been receiving were "reasonable and necessary. . . . [having] been done in [an] attempt to manage his back pain."

¶10 Dr. Dowdle suggested that there existed a number of treatment options for Smoczyk. One was a procedure called a medial branch block, which would be intended to temporarily decrease Smoczyk's back pain and determine whether he might be a candidate for a subsequent procedure, a radiofrequency facet denervation, which might have helped eliminate some of his lower back pain. Dr. Dowdle also recommended work restrictions: a 20-25 pound maximum lifting limit, minimal bending and lifting, and avoiding prolonged single positioning. Additionally, Dr. Dowdle assessed a five percent permanent partial disability rating, and recommended that Smoczyk discontinue physical therapy.

¶11 Smoczyk returned to Dr. Hebl on October 3, 2007, and reported worsening neck pain, as well as continuing, persistent back and leg pain. At that visit, Dr. Hebl removed Smoczyk from work-availability and reiterated that Smoczyk should continue to pursue Social Security Disability benefits. Thereafter, Smoczyk was deemed eligible for Social Security disability benefits, as well as permanent partial disability benefits for five percent of the body as a whole and temporary total disability for the period between February and December 2007.

¶12 During late fall and winter of 2007, Smoczyk continued treatment with Dr. Schlimgen, who discussed Dr. Dowdle's recommendation for a radiofrequency rhizotomy procedure with

Smoczyk.[7] Specifically, Dr. Schlimgen noted that the recommended procedure would address back and hip pain, but that it would not treat Smoczyk's leg pain, which still comprised a significant portion of his overall pain. Dr. Schlimgen noted that because he could not rule out the facet joints as "being at least a contributor" to Smoczyk's back and hip pain, "it would be reasonable to consider a medial branch blockade to determine if the facet joints are contributing to this portion of his pain." Dr. Hebl later concurred with these recommendations.

¶13 Smoczyk again met with Dr. Hebl in February 2008, and reiterated his reluctance to undergo additional procedures, based on his concern of exacerbating his pain. Based on Smoczyk's hesitance to undergo further treatment, Dr. Hebl noted that Smoczyk was at the end of healing, and that he had a permanent disability rating of 20 percent attributable to his lower back and leg conditions, as well as three percent attributable to his neck.

---

[7] Although Dr. Schlimgen referred to "radiofrequency rhizotomy" and Dr. Dowdle used the term "radiofrequency facet denervation," the parties have used the terms interchangeably throughout this litigation. A radiofrequency facet denervation refers to a procedure that utilizes bursts of electrical energy in the radiofrequency range to sever the nerve supply of the facet joints, which are found on the faces of adjacent vertebrae. See Stedman's Medical Dictionary 1503 (27th ed. 2000); Taber's Cyclopedic Medical Dictionary 555, 1158 (20th ed. 2005). Similarly, a radiofrequency rhizotomy refers to a procedure utilizing electrical energy to sever a spinal nerve root to relieve pain or reduce spasticity. See Stedman's Medical Dictionary at 1503, 1610. Hereinafter, we use the term radiofrequency rhizotomy to refer to that procedure.

¶14 During summer and fall of 2008, Smoczyk underwent two separate vocational assessments, one on his behalf conducted by Sidney Bauer, and the other on Xcel's behalf, conducted by John Meltzer. Relying upon Dr. Dowdle's suggested limitations, Bauer concluded that Smoczyk's only potential occupational opportunities would be in the service industry, but that Smoczyk's physical restrictions, his education, and the limited labor market resulted in Smoczyk's being permanently and totally disabled under the odd-lot doctrine. Similarly, Bauer concluded that Smoczyk was permanently and totally disabled under Dr. Hebl's opinion as well, based on Dr. Hebl's recommendation regarding permanent partial disability rating and his suggestion that Smoczyk would be unable to return to gainful employment.

¶15 Xcel's vocational expert, John Meltzer, also proffered opinions based on the medical conclusions of Drs. Dowdle and Hebl. Based on Dr. Dowdle's opinion, Meltzer concluded that Smoczyk would have a 60 to 70 percent decrease in earning capacity, but that with a diligent search, Smoczyk would be able to find suitable light-duty work within his home market. Conversely, based on Dr. Hebl's opinion, Meltzer concluded that Smoczyk would be permanently and totally disabled for vocational purposes. Ultimately, Meltzer concluded that Smoczyk could pursue positions in the service industry, such as sales clerk, hotel clerk, or security guard.

¶16 On December 16, 2008, a hearing on Smoczyk's worker's compensation claim was held before the Worker's Compensation Division of the DWD. After hearing testimony from Smoczyk and

8

reviewing the record, the ALJ, Enemuoh-Trammell, concluded that Smoczyk was entitled to temporary total disability benefits through February 13, 2008, when Dr. Hebl concluded that Smoczyk had reached the end of healing. The ALJ declined to award any permanent partial disability beyond the five percent that Xcel had conceded based on Dr. Dowdle's opinion.

¶17 Particularly relevant to the dispute now before this court, ALJ Enemuoh-Trammell held that Smoczyk's failure to pursue a medial branch blockade to determine his candidacy for a radiofrequency rhizotomy precluded a determination on permanent total disability. Accordingly, the ALJ entered an interlocutory order that provided that if Smoczyk failed to pursue "further treatment" within two years of the order, Xcel could seek a final order on the findings and conclusions at issue.

¶18 Soon after the ALJ's decision, Smoczyk again visited Dr. Hebl, who suggested that the radiofrequency rhizotomy referred to by the ALJ was no longer feasible. This conclusion was affirmed by Dr. Schlimgen, who noted that it was unlikely that a rhizotomy would provide Smoczyk any relief. Based on that conclusion, Dr. Schlimgen expressly noted that he "recommended against [rhizotomy] as a treatment option," and instead recommended occasional corticosteroid injections, physical therapy, and exercise as methods of pain management.

¶19 On August 11, 2009, a second DWD hearing was held, this time before ALJ Mary Lynn Endter. After hearing testimony from Smoczyk and considering the evidence of record, ALJ Endter concluded that Smoczyk had a permanent partial disability of 60

percent, based on Xcel's vocational expert's opinion, but that Smoczyk was not entitled to permanent total disability benefits.

¶20 Smoczyk then filed a timely petition for review with LIRC, seeking relief from ALJ Endter's decision denying permanent total disability benefits. In a written order, LIRC reviewed the opinions of the medical and vocational experts, the testimony of Smoczyk, and the findings and conclusions of the ALJs who had reviewed Smoczyk's case. LIRC concluded that, based on the odd-lot doctrine, Smoczyk had made a prima facie case for permanent total disability by showing that he had been "injured in an industrial accident and, because of [his] injury, age, education, and capacity, [he] is unable to secure any continuing and gainful employment." Smoczyk v. Xcel Energy Servs., Inc., WC Claim No. 2007-009610, at 8 (LIRC, May 6, 2010) (citing Balczewski v. DILHR, 76 Wis. 2d 487, 251 N.W.2d 794 (1977)). Based on that showing, LIRC held that the burden shifted to Xcel to show that there were jobs available for Smoczyk, but that Xcel had failed to make such a showing.

¶21 In particular, LIRC concluded that the opinion of Smoczyk's vocational expert, Bauer, was more persuasive than that of Meltzer. Bauer concluded that even if Smoczyk could compete for jobs in the service industry notwithstanding his age and educational background, the physical components of those jobs (e.g., sitting, standing) would not reasonably accommodate Smoczyk's physical restrictions. Accordingly, LIRC concluded that as of February 13, 2008 (the date on which Dr. Hebl concluded that Smoczyk had reached the end of healing), Smoczyk

10

was permanently and totally disabled, and that Xcel and its insurer were required to pay benefits in accordance with that determination.

¶22 In response, Xcel filed a summons and complaint seeking judicial review of LIRC's decision in the Chippewa County Circuit Court, contending that LIRC exceeded its authority because LIRC's conclusion was not supported by credible and substantial evidence in the record. In response, LIRC contended first that the circuit court lacked competency to proceed upon Xcel's complaint and that the complaint should therefore be dismissed. LIRC reasoned that Wis. Stat. § 102.23(1)(a) required Xcel to name all adverse parties as defendants in its complaint, and that Xcel had failed to name its insurer, ACE. Additionally, LIRC contended that if the court concluded that competency was not at issue, Xcel had failed to prove that there was no credible and substantial evidence to support LIRC's findings. The circuit court rejected LIRC's competency argument, but otherwise affirmed LIRC's order granting Smoczyk permanent total disability benefits.

¶23 Xcel filed a timely appeal, based on the same arguments it had raised in the circuit court. The court of appeals, however, declined to reach the merits of LIRC's decision. See Xcel, 339 Wis. 2d 413, ¶6. Instead, the court concluded that ACE was an "adverse party" under Wis. Stat. § 102.23(1)(a), relying upon the court of appeals' broad statement in Miller I, 166 Wis. 2d at 842, that an "'adverse party' . . . includes any party bound by [LIRC's] order or award

11

granting or denying compensation to the claimant." On that basis, the court of appeals affirmed the circuit court's order affirming LIRC, and remanded with instructions to dismiss Xcel's complaint. Xcel, 339 Wis. 2d 413, ¶14. Xcel then filed a timely petition for review in this court, which we granted.

## II. STANDARD OF REVIEW

¶24 Xcel first argues that the court of appeals erred in directing the circuit court to dismiss Xcel's complaint for lack of competency to proceed due to ACE not being named as an "adverse party" under Wis. Stat. § 102.23(1)(a). Whether the circuit court possessed competency to adjudicate the complaint is a question of law that we review independently of the court of appeals and the circuit court. See Miller II, 173 Wis. 2d at 711. Similarly, determining whether ACE was an "adverse party" under § 102.23(1)(a), requires us to interpret the statutory meaning of that term, which presents a question of law for our independent review. Cnty. of Dane v. LIRC, 2009 WI 9, ¶14, 315 Wis. 2d 293, 759 N.W.2d 571.

¶25 Next, Xcel argues that, if we reach the merits of LIRC's decision, we should set aside LIRC's order because: (1) there was not credible and substantial evidence to support a finding that Smoczyk reasonably refused to undergo the medical procedures suggested by the first ALJ; and (2) LIRC exceeded its authority by awarding Smoczyk benefits contrary to the first ALJ's order suggesting that Smoczyk undergo a radiofrequency rhizotomy before benefits could be determined. With regard to LIRC's findings of fact, we will uphold those findings if there

12

is "credible and substantial evidence in the record on which reasonable persons could rely to make the same findings." deBoer Transp., Inc. v. Swenson, 2011 WI 64, ¶30, 335 Wis. 2d 599, 804 N.W.2d 658 (quoting Begel v. LIRC, 2001 WI App 134, ¶5, 246 Wis. 2d 345, 631 N.W.2d 220 (internal quotation marks omitted)). The question of whether LIRC exceeded its authority is a question of law, and we owe no deference to an agency's determination of the scope of its powers. See Wis.'s Envtl. Decade, Inc. v. Pub. Serv. Comm'n, 81 Wis. 2d 344, 351, 260 N.W.2d 712 (1978).

## III. DISCUSSION

A. "Adverse Party" Requirement Under Wis. Stat. § 102.23(1)(a)

¶26 The court of appeals concluded that Xcel's failure to name ACE as a defendant in the complaint deprived the circuit court of competency to proceed because ACE was an "adverse party" required to be named under Wis. Stat. § 102.23(1)(a). The court of appeals relied upon a definition of "adverse party" in Miller I, 166 Wis. 2d at 841–42, that provided that an adverse party is any party "bound by the Commission's order or award granting . . . compensation to the claimant." See id. In Miller II, we declined to address that definition from Miller I and instead relied upon the established definition of "adverse party," based on prior decisions of this court discussing the term, as well as Black's Law Dictionary. To address the question presented, we must interpret the term "adverse party" under § 102.23(1)(a). But first, to provide context to the

13

meaning of LIRC's competency challenge, we begin with a brief discussion of competency.

### 1. Competency

¶27 Competency refers to a "circuit court's ability to _exercise_ the subject matter jurisdiction vested in it" by Article VII, Section 8 of the Wisconsin Constitution.[8] Vill. of Trempealeau v. Mikrut, 2004 WI 79, ¶9, 273 Wis. 2d 76, 681 N.W.2d 190 (emphasis added). That section provides that circuit courts have jurisdiction to hear "all matters civil and criminal within this state." Wis. Const. art. VII, § 8. Given this broad constitutional grant of subject matter jurisdiction to the circuit courts, we have recognized that "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." Vill. of Trempealeau, 273 Wis. 2d 76, ¶8 (quoting Mueller v. Brunn, 105 Wis. 2d 171, 176, 313 N.W.2d 790 (1982) (internal quotation marks omitted)). That is, because subject matter jurisdiction is conferred on the courts by the constitution, it cannot be revoked by statute. See id.

¶28 Although a circuit court may not be deprived of jurisdiction by operation of a statute, a circuit court may lack competency to render a valid order or judgment when the parties

---

[8] In some older cases, the concept of circuit court competency was often discussed as coextensive with the court's subject matter jurisdiction, but recent cases make clear that the two concepts are distinct and that it is competency, not subject matter jurisdiction, that may be lacking where statutory prerequisites are not followed. See Vill. of Trempealeau v. Mikrut, 2004 WI 79, ¶¶8-9, 273 Wis. 2d 76, 681 N.W.2d 190.

14

seeking judicial review fail to meet certain statutory requirements. See id., ¶9. Not every failure to comply with statutory requirements will deprive the court of competency, however. "Only when the failure to abide by a statutory mandate is 'central to the statutory scheme' of which it is a part will the circuit court's competency to proceed be implicated." See id., ¶10 (quoting State v. Bollig, 222 Wis. 2d 558, 567-68, 587 N.W.2d 908 (Ct. App. 1998)).

¶29 When a party seeks judicial review of an order or award by LIRC granting or denying worker's compensation benefits, Wis. Stat. § 102.23(1)(a) defines the exclusive statutory scheme by which the party may file a summons and complaint in the circuit court. See Miller II, 173 Wis. 2d at 706. As discussed in greater detail below, we have long recognized that compliance with § 102.23(1)(a)'s "adverse party" requirement is central to the statutory scheme of judicial review of LIRC's worker's compensation decisions. See id.; accord Brandt v. LIRC, 166 Wis. 2d 623, 626, 480 N.W.2d 494 (1992); Holley v. DILHR, 39 Wis. 2d 260, 264, 158 N.W.2d 910 (1968). Accordingly, failure to name an adverse party as a defendant under § 102.23(1)(a) deprives the circuit court of competency and requires dismissal of the complaint. Miller II, 173 Wis. 2d at 706. We turn now to the interpretation of "adverse party" under § 102.23(1)(a) to determine whether ACE was an adverse party required to have been named as a defendant in Xcel's complaint.

15

2. Wis. Stat. § 102.23(1)(a)'s "adverse party"

¶30 Our interpretation of "adverse party" under Wis. Stat. § 102.23(1)(a) begins with the language of the statute.[9] <u>Wis. Indus. Energy Group, Inc. v. Pub. Serv. Comm'n</u>, 2012 WI 89, ¶15, 342 Wis. 2d 576, 819 N.W.2d 240. "If the meaning of the statute is plain, we ordinarily stop the inquiry." <u>State ex rel. Kalal v. Circuit Court for Dane Cnty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. When examining plain meaning, we give the statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." <u>Id.</u> "In determining the ordinary meaning of undefined words, '[w]e may consult a dictionary to aid in statutory construction.'" <u>Cnty. of Dane</u>, 315 Wis. 2d 293, ¶23 (quoting <u>Spiegelberg v. State</u>, 2006 WI 75, ¶19, 291 Wis. 2d 601, 717 N.W.2d 641). Also, when we engage in statutory interpretation, "we are assisted by prior decisions that have examined the relevant statutes." <u>State v. Soto</u>, 2012 WI 93, ¶20, 343 Wis. 2d 43, 817 N.W.2d 848.

---

[9] Wisconsin Stat. § 102.23(1)(a) provides, in relevant part:

> Within 30 days after the date of an order or award made by the commission either originally or after the filing of a petition for review with the department under s. 102.18 any party aggrieved thereby may by serving a complaint as provided in par. (b) and filing the summons and complaint with the clerk of the circuit court commence, in circuit court, an action against the commission for the review of the order or award, <u>in which action the adverse party shall also be made a defendant</u>. (Emphasis added.)

16

¶31 "Adverse party" is not defined under Wis. Stat. § 102.23(1)(a), although the language of that section governing judicial review of worker's compensation claims has existed relatively unchanged since 1911. Compare § 102.23(1)(a) with Wis. Stat. § 2394-19 (1911). See also Hammond-Chandler Lumber Co. v. Indus. Comm'n of Wis., 163 Wis. 596, 602, 158 N.W. 292 (1916). Similar to the language currently used in § 102.23(1)(a), the earliest phrasing of the relevant provision stated that a party aggrieved by an order or award of the Industrial Commission (LIRC's predecessor) could commence an action in circuit court "against the [commission] for the review of such award, in which action the adverse party shall also be made defendant." § 2394-19 (1911) (emphasis added).

¶32 A dictionary definition from around the time the statutory language was adopted provides a common and accepted understanding of the term "adverse." The Webster's New International Dictionary defines "adverse" as "(1) [a]cting against, or in a contrary direction; opposed; antagonistic; . . . (2) [i]n hostile opposition to one's interest; . . . (5) Law. Having opposing interests; having interests for the preservation of which opposition is essential." Webster's New International Dictionary 38 (2d ed. 1934). Notably, our early interpretations of the term "adverse party," as used in Wis. Stat. § 2394-19 (1915), comport with the dictionary definition of the term "adverse." For example, in Hammond-Chandler, 163 Wis. at 602, we held that the term "adverse party," in the context of the statute allowing an "aggrieved" party to bring an

17

action for judicial review of a worker's compensation order, was intended to refer to "the persons interested in supporting the award," or, similarly, "the one in whose favor the award was made."

¶33 The following year we reaffirmed our earlier interpretation of the term "adverse party" in Gough v. Industrial Commission of Wisconsin, 165 Wis. 632, 633, 162 N.W. 434 (1917), in which a deceased man's wife and mother both claimed worker's compensation benefits for the man's death. After the Industrial Commission awarded benefits to the mother, the wife commenced an action for judicial review, but named only the Commission and the man's employer——but not the mother——in the complaint. Id. This court held that the mother was an "adverse party" required to be named under the statute, recognizing that to decide the case in favor of the wife "would necessarily require the setting aside of the award in favor of the mother . . . . The rights, if any, therefore, of the widow would necessarily be adverse to those of the mother." Id. at 635–36.

¶34 Accordingly, the requirement of naming an adverse party as a defendant under Wis. Stat. § 102.23(1)(a) has long been interpreted to mean that the party seeking judicial review of LIRC's decision must, in addition to naming LIRC, name the party "in whose favor" LIRC decided the case. This interpretation adheres to the common, ordinary, accepted meaning of the term, and also comports with Black's Law Dictionary's definition of "adverse party," as we recognized in Brandt, 166

18

Wis. 2d at 630-31. Under that definition, an adverse party includes "every party whose interest in relation to the judgment or decree appealed from is in conflict with the modification or reversal sought by the appeal." Id. (internal quotation marks omitted).

¶35 Furthermore, LIRC has adopted the "in favor of" definition of "adverse party" in its regulation governing judicial review of worker's compensation actions. Wis. Admin. Code § LIRC 3.05. Similar to the provisions of Wis. Stat. § 102.23(1)(a), the regulation provides that "[t]he action [for judicial review] shall be commenced against [LIRC], and the party in whose favor the order or award was made shall also be made a defendant." Id.

¶36 The recognized definitions of "adverse party" all express a common conception of adversity, which is evident in the context of the statutory language of Wis. Stat. § 102.23(1)(a). Under that section, the party empowered to bring a complaint is the party "aggrieved" by LIRC's decision, and that party becomes the plaintiff in the circuit court action. See § 102.23(1)(a); see also Hammond-Chandler, 163 Wis. at 599 ("Only a party aggrieved by a judgment can appeal therefrom. Where the party appealing is not in any way aggrieved, the appeal should be dismissed." (Citations omitted.)). The "aggrieved party," or plaintiff, is then required to name the "adverse party" as a "defendant" in the complaint. See § 102.23(1)(a). Based on accepted dictionary definitions of the term "adverse," i.e., "having opposing

19

interests," for the term "adverse party" to make sense in the context of an "aggrieved party" and "defendant," the "adverse party" that must be named as a defendant must be a party that was not aggrieved by LIRC's order or award on the issue raised by the complainant.

¶37 With this understanding of "adverse party," we turn to the Miller case.[10] As demonstrated below, we conclude that the court of appeals in Miller I erroneously expanded the meaning of the term "adverse party" when it stated that, for purposes of Wis. Stat. § 102.23(1)(a), the term "includes any party bound by [LIRC's] order or award granting or denying compensation to the claimant." Miller I, 166 Wis. 2d at 842.

¶38 The Miller case involved an action brought by Miller Brewing and one of its insurers, National Union Fire Insurance, seeking judicial review of LIRC's worker's compensation award for one of Miller's employees. See Miller II, 173 Wis. 2d at 704. In the LIRC proceeding, LIRC had dismissed another insurer, Twin City Fire Insurance, based on the date of the employee's injury and the different time periods for which the two insurers had provided Miller coverage. Id. at 704-05.

¶39 In Miller, the date of injury was highly relevant because, if the employee was deemed to have been injured at an earlier date (the date on which the employee first suffered a

---

[10] We use the designation "Miller" to discuss the background facts of the case, whereas we rely on the "Miller I" and "Miller II" designations when discussing the respective holdings in the court of appeals and this court.

wage loss), National Union would have been liable; conversely, if the employee was deemed to have been injured at a later date (the date employment was terminated), then Twin City would have been liable. See id. at 708-09. The Department of Industry, Labor, and Human Relations (DILHR) had first concluded that the date of injury was the later date, but when LIRC decided the case, it concluded that the date of injury was the earlier date. See id. Based on that conclusion, LIRC dismissed Twin City because the injury had occurred outside of Twin City's coverage period. See id.

¶40 When Miller and National Union filed a complaint seeking review of LIRC's decision, they did not name Twin City as a defendant in the proceeding, and the circuit court concluded that the failure to name Twin City deprived the court of competency. See id. at 709-11. The court of appeals affirmed the dismissal for lack of competency, but relied upon a broader conception of "adverse party": "any party bound by [LIRC's] order or award granting or denying compensation to the claimant." Miller I, 166 Wis. 2d at 842.

¶41 On review, we reaffirmed our longstanding definition of "adverse party" under Wis. Stat. § 102.23(1)(a), and recognized two different phrasings of that definition, both of which supported the conclusion that Twin City was an adverse party whose absence deprived the circuit court of competency. See Miller II, 173 Wis. 2d at 715-18. We first reaffirmed the longstanding definition of "adverse party" that we had developed in Hammond-Chandler, 163 Wis. at 602, and which LIRC had

21

incorporated into Wis. Admin. Code § LIRC 3.05, that an adverse party is a party "in whose favor the order or award was made." See Miller II, 173 Wis. 2d at 713-17. We also reaffirmed the Black's Law Dictionary definition that we had adopted in Brandt, 166 Wis. 2d at 630-31, that "adverse party" includes "every party whose interest in relation to the judgment or decree appealed from is in conflict with the modification or reversal sought by [the action for judicial review]." See Miller II, 173 Wis. 2d at 714-17 (internal quotation marks omitted).

¶42 Additionally, Miller and National Union encouraged us to adhere to another definition of "adverse party," including any party "whose interests were adverse to the appellant during the administrative proceedings." Id. at 715-718. However, we declined to adopt that definition, and cautioned that there are instances in which a party's position in the administrative proceeding is not determinative of adversity upon judicial review. See id. at 718-23.

¶43 Furthermore, and most notable for present purposes, in Miller II we also declined to address the definition relied on by the court of appeals in Miller I, 166 Wis. 2d at 842. Instead, we concluded that the existing definitions properly disposed of the question of which parties were adverse for purposes of Wis. Stat. § 102.23(1)(a). See Miller II, 173 Wis. 2d at 716 n.8.

¶44 LIRC now embraces the definition adopted by the court of appeals in Miller I, and urges us to expand upon the established definition that we reaffirmed in Miller II to

22

incorporate the court of appeals' broad definition. However, we decline to expand the definition of "adverse party" to include "any party bound by [LIRC's] order or award granting or denying compensation," see id., and take this opportunity to reaffirm our adherence to the longstanding definition that we relied upon in Miller II.[11] Moreover, we conclude that a definition proffered by the court of appeals in Miller I is erroneous, and we hereby withdraw the language from Miller I stating that "any party bound by [LIRC's] order or award granting or denying compensation" is an "adverse party" under Wis. Stat. § 102.23(1)(a). See Miller I, 166 Wis. 2d at 842. In so doing, we reaffirm our adherence to the established definition of "adverse party," as stated in Miller II, 173 Wis. 2d at 716-19.

¶45 Under our established definition, Xcel's insurer, ACE, was not an adverse party required to be named under Wis. Stat. § 102.23(1)(a). First, there is no suggestion that LIRC's award was "in favor" of ACE, as we have interpreted that term. See id. at 713-14; see also Wis. Admin. Code § LIRC 3.05. Second, Xcel's action in circuit court did not seek to reverse or modify LIRC's decision in any way that would have conflicted with ACE's

---

[11] We take this opportunity to clarify the equivalence of the two phrasings of the "adverse party" definition discussed in Miller II; that is, (1) a party "in whose favor an award has been made" and (2) a party "whose interest is in conflict with the modification" of LIRC's order sought by the complainant. Miller II, 173 Wis. 2d at 716. As discussed above, both phrasings pit the party "aggrieved" by LIRC's order against a party who was not "aggrieved" by the order (or at least that portion challenged by the aggrieved party).

23

interests. Rather, the modification Xcel sought was intended to reduce its exposure to liability for Smoczyk's permanent total disability benefits, and although the terms of the insurance contract between Xcel and ACE are not before this court, logic suggests that the downward modifications Xcel sought would correspond to the interests of ACE. Moreover, in contrast with the Miller case, there is no suggestion that there is any coverage dispute with another insurer that would have provided coverage during a different coverage period, and even if there were, LIRC's award was not in favor of such other insurer such that the insurer would have an interest in upholding LIRC's decision.

¶46 Accordingly, we conclude that, under Wis. Stat. § 102.23(1)(a), ACE was not adverse to Xcel; and therefore, ACE's absence from Xcel's complaint did not deprive the circuit court of competency to proceed to the merits. Accordingly, we reverse the court of appeals' decision.

### B. Xcel's Complaint

¶47 Having concluded that the circuit court had competency to decide Xcel's complaint, we turn to the merits of that complaint, which alleges that: (1) LIRC's order should be set aside because it was not supported by credible and substantial evidence in the record; and (2) LIRC exceeded its authority by awarding Smoczyk permanent and total disability benefits, because LIRC did not give proper deference to the first ALJ's order suggesting a radiofrequency rhizotomy. Xcel's first argument raises a question of whether LIRC's factual findings

24

were supported by the record, while the second raises a question of law regarding the scope of LIRC's authority. We address these claims separately.

### 1. Credible and substantial evidence

¶48 Xcel argues that there was not credible and substantial evidence in the record to demonstrate that Smoczyk reasonably refused to undergo a radiofrequency rhizotomy. "The reasonableness of an employee's neglect or refusal to submit to treatment is a question of fact" for LIRC's determination. Klein Indus. Salvage v. DIHLR, 80 Wis. 2d 457, 461, 259 N.W.2d 124 (1977). It is well established that on review, we will uphold LIRC's findings of fact, provided there is credible and substantial evidence in the record on which reasonable persons could rely in reaching the same findings. See deBoer Transp., 335 Wis. 2d 599, ¶30. Credible and substantial evidence is that which is "sufficient to exclude speculation or conjecture." Bumpas v. DILHR, 95 Wis. 2d 334, 343, 290 N.W.2d 504 (1980). Moreover, Wis. Stat. § 102.23(6) provides that where LIRC's order or award depends on a finding by LIRC, "the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact." See also Milwaukee Symphony Orchestra, Inc. v. DOR, 2010 WI 33, ¶31, 324 Wis. 2d 68, 781 N.W.2d 674 ("[T]he weight and credibility of the evidence are for the agency, not the reviewing court, to determine." (quoting Hilton v. DNR, 2006 WI 84, ¶25, 293 Wis. 2d 1, 717 N.W.2d 166 (internal quotation marks omitted)). The burden of showing that LIRC's decision was not

25

supported by credible and substantial evidence is on the party seeking to set aside LIRC's findings and order. See Bretl v. LIRC, 204 Wis. 2d 93, 99, 553 N.W.2d 550 (Ct. App. 1996).

¶49 In concluding that Smoczyk was entitled to benefits for permanent total disability, LIRC relied on the odd-lot doctrine that provides that "some injured workers should be characterized as permanently, totally disabled even though they are still capable of earning occasional income." Beecher v. LIRC, 2004 WI 88, ¶2, 273 Wis. 2d 136, 682 N.W.2d 29. Under the odd-lot doctrine, a worker's compensation claimant is required to make a prima facie showing "that he has been injured in an industrial accident and, because of his injury, age, education, and capacity, he is unable to secure any continuing and gainful employment." Id., ¶3 (quoting Balczewski, 76 Wis. 2d at 495). When the claimant makes a prima facie showing, the burden shifts to the employer to show that the claimant is employable and that jobs do exist for the injured claimant. Id.

¶50 In its written decision in this case, LIRC set forth the elements of a prima facie case under the odd-lot doctrine and then applied its findings to that law. Relevant to its odd-lot analysis, LIRC relied on the opinions of the experts in this case, namely those of Dr. Dowdle and Sidney Bauer, Smoczyk's vocational expert. In doing so, LIRC explicitly determined that Bauer's opinion was more persuasive than Xcel's vocational expert, John Meltzer. LIRC noted in its decision that Bauer provided persuasive reasons why Meltzer's employment recommendations were not feasible in light of Smoczyk's physical

restrictions and the reasonable likelihood that Smoczyk would be able to compete in the local labor market, based on his education and experience.

¶51 Bauer's report on Smoczyk's vocational opportunities is in the record, as are the reports of Meltzer and Drs. Stark, Dowdle, Hebl, and Schlimgen, upon which the vocational experts' reports were based. Accordingly, there is credible and substantial evidence in the record to support LIRC's finding that Smoczyk is permanently totally disabled under the odd-lot doctrine.

¶52 The credibility of the doctors' opinions is a matter entrusted to LIRC, and we will not speculate as to how LIRC reached the findings that it did. LIRC's decision noted that Dr. Schlimgen changed his recommendation regarding further treatment, and on that basis, LIRC declined to draw any adverse inference about Smoczyk's decision not to seek a radiofrequency rhizotomy. It is not LIRC's role to evaluate every individual premise upon which an expert's opinion is based, nor is it the role of the courts to verify that LIRC's decision gave the proper weight to experts' intermediate conclusions. Rather, LIRC's role is to make findings supported by credible and substantial evidence in the record. Similarly, our role is to examine the record to ensure that evidence of record supports the findings LIRC actually reached, not to reevaluate the weight and credibility of every piece of evidence upon which LIRC relied. We therefore decline to independently evaluate whether Smoczyk should have undergone further medical procedures.

¶53 Moreover, Xcel's specific factual argument, that there is not credible and substantial evidence in the record that Smoczyk "reasonably refused medical treatment," amounts to a challenge to the doctors' medical opinions regarding the proper course of treatment for Smoczyk, rather than a challenge to LIRC's findings. Drs. Hebl and Schlimgen considered the option of a rhizotomy, but ultimately concluded that the procedure no longer presented a feasible option for treating Smoczyk's pain at the time of LIRC's review. The record includes multiple references to the progression of Smoczyk's condition, including the doctors' statements recognizing the diminished likelihood that certain treatments, such as a radiofrequency rhizotomy, would have any lasting effect on Smoczyk's pain.

¶54 We therefore conclude that there is credible and substantial evidence in the record on which a reasonable person could rely to reach LIRC's finding that Smoczyk was not required to undergo a rhizotomy before being found permanently and totally disabled.

## 2. LIRC's authority

¶55 Xcel's acting without authority argument is related to its first argument, that LIRC's decision is not supported by credible and substantial evidence, because when a decision by LIRC is not supported by credible and substantial evidence, the decision is in excess of LIRC's authority. See M. & M. Realty Co. v. Indus. Comm'n, 267 Wis. 52, 57, 64 N.W.2d 413 (1954). Moreover, as discussed in greater detail below, Xcel's suggestion that LIRC was bound by the first ALJ's

28

recommendation, in effect, suggests that there was not credible and substantial evidence in the record for LIRC to make a different finding than the ALJ. Although the two arguments are separate, the governing principles overlap.

¶56 When a party to a worker's compensation proceeding seeks review of an ALJ's finding or order, LIRC is not bound by the ALJ's decision, and may "affirm, reverse, set aside or modify the findings or order in whole or in part, or direct the taking of additional evidence." Wis. Stat. § 102.18(3). Moreover, when we review an award or denial of worker's compensation benefits, we review the decision of LIRC, rather than the decisions of the ALJs, the circuit court, or the court of appeals. See Cnty. of Dane, 315 Wis. 2d 293, ¶14; Transamerica Ins. Co. v. DILHR, 54 Wis. 2d 272, 281, 195 N.W.2d 656 (1972) ("The findings before us for review are those of the department, not those earlier made by the examiner."). Furthermore, we have recognized that "[u]nreviewed administrative law judge decisions regarding Chapter 102 are not binding on the Commission," Theuer v. LIRC, 2001 WI 26, ¶13, 242 Wis. 2d 29, 624 N.W.2d 110. Similarly, an ALJ's failure to make a finding on a particular issue also does not bind LIRC, and the lack of a finding will not preclude a decision by LIRC on that matter. See Worsch v. DILHR, 46 Wis. 2d 504, 509, 175 N.W.2d 201 (1970).

¶57 Xcel's argument that LIRC exceeded its authority when it issued an order that "conflicted with the un-appealed holding" of the first ALJ reduces to a claim that LIRC was bound

29

by the ALJ's order, and that LIRC was not empowered to decide the issue of permanent total disability before Smoczyk obtained a radiofrequency rhizotomy. Not only does this argument disregard the non-binding effect of ALJs' findings on LIRC's decisions, but it also ignores LIRC's express statutory authority over Smoczyk's timely appeal from the second ALJ's order denying permanent and total disability benefits. See Wis. Stat. § 102.18(3); see also Davis v. Indus. Comm'n, 22 Wis. 2d 674, 678–79, 126 N.W.2d 611 (1964) ("We are required to assume, unless there is affirmative proof to the contrary, that the commission acted regularly as to all matters and pursuant to the rules of law and proper procedures in its determination.") (internal quotation marks and citation omitted).

¶58 Therefore, we conclude that LIRC did not exceed its authority when it decided Smoczyk's claim for permanent total disability without requiring him to undergo further medical procedures as suggested by the first ALJ. In reaching its conclusion, LIRC addressed both ALJs' findings and determined that the facts of record compelled a different result. This was proper under the statutes governing LIRC's review, as well as our cases discussing LIRC's discretion over ALJs' findings and conclusions. Accordingly, we affirm LIRC's award for Smoczyk.

## IV. CONCLUSION

¶59 We conclude that the circuit court had competency to adjudicate Xcel's complaint, notwithstanding Xcel's omission of ACE, because ACE was not an "adverse party" for purposes of Wis. Stat. § 102.23(1)(a). In reaching this conclusion, we reaffirm

30

our decision in <u>Miller II</u>, 173 Wis. 2d at 713-18, and conclude that an "adverse party" under § 102.23(1)(a) is a party "in whose favor" LIRC's award or order was made, or a party "whose interest is in conflict with the modification or reversal" of LIRC's order or award. We also now withdraw language that creates a definition of "adverse party" proffered by the court of appeals in <u>Miller I</u>, 166 Wis. 2d at 842, which is not in accord with our definition.

¶60 Additionally, rather than remanding to the court of appeals to review the merits of Xcel's complaint, which the court of appeals did not review, we affirm LIRC's award in favor of Smoczyk. First, based on the evidence of record, LIRC's finding that Smoczyk is entitled to permanent total disability benefits on an odd-lot basis is supported by credible and substantial evidence. Second, Xcel has not demonstrated that LIRC exceeded its authority in reaching a conclusion that departed from an ALJ's order in Smoczyk's worker's compensation proceeding before the DWD. Therefore, we reverse the decision of the court of appeals and we remand with instructions to affirm LIRC's decision awarding permanent total disability benefits to Smoczyk.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶61 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* Although I do not join the majority opinion, I agree that the circuit court can adjudicate Xcel's complaint even though ACE was not a named party. I also agree that LIRC's decision and order should be affirmed on the merits. I write separately to express two concerns.

I

¶62 One concern is that the majority opinion repeatedly and incorrectly paraphrases Article VII, Section 8 of the Wisconsin Constitution without fully and accurately stating its terms. The majority opinion states as follows:

- Article VII, Section 8 "provides that circuit courts have jurisdiction to hear 'all matters civil and criminal within this state.'" Majority op., ¶27.

- "[W]e have recognized that [according to Article VII, Section 8] 'no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever.'" Majority op., ¶27.

- "[B]ecause subject matter jurisdiction is conferred on the courts by the constitution, it cannot be revoked by statute." Majority op., ¶27.

- "Although a circuit court may not be deprived of jurisdiction by operation of a statute, a circuit court may lack competency [to render certain judgments]. . . ." Majority op., ¶28.

¶63 In contrast, the Wisconsin Constitution, Article VII, Section 8, provides as follows: "<u>Except as otherwise provided</u>

by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law" (emphasis added).

¶64 For a full discussion of the import of this constitutional provision, which gets lost in the majority opinion's paraphrasing and in various discussions of subject matter jurisdiction and competency, see Eberhardy v. Circuit Court for Wood Cnty., 102 Wis. 2d 539, 547-553, 307 N.W.2d 881 (1981).

¶65 Misstating this constitutional provision has, in my opinion, led to a confusing body of law on the meaning and use of the concepts of "subject matter jurisdiction" and "competency." This confusion has taken on a life of its own over the years and shows no sign of abating. See Shopper Advertiser, Inc. v. DOR, 117 Wis. 2d 223, 236-40, 344 N.W.2d 115 (1984) (Abrahamson, J., concurring in part & dissenting in part).

II

¶66 My second concern is that the majority opinion perpetuates uncertainty in the law. Plaintiffs are going to be uncertain regarding whom to name as "adverse parties" under Wis. Stat. § 102.23. A simple error may cause plaintiffs to be thrown out of court.

¶67 LIRC asked the court to adopt broad language from Miller I. This would have thrown the plaintiff in the present

case out of court but might have brought more certainty to the law. The majority opinion is unwilling to do so.

¶68 Instead, the majority opinion withdraws the following language from <u>Miller I</u>:[1] "any party bound by [LIRC's] order or award granting or denying compensation is an 'adverse party.'" Majority op., ¶44. Thus, the majority opinion accomplishes what the <u>Miller II</u>[2] court was unwilling to do.

¶69 A goal in interpreting the text of Wis. Stat. § 102.23 is to create certainty for the parties. Under the statute, a complaint against LIRC for review of its order or award——in which the adverse party is also to be made a defendant——is filed in circuit court and served upon a commissioner or agent authorized by the commission to accept service. Such service constitutes complete service on all parties. Wis. Stat. § 102.23(1)(b). The commission then mails one copy to each other defendant.

¶70 No plaintiff should lose his, her, or its day in court by failing to name a party as a defendant or naming the wrong party as a defendant under Wis. Stat. § 102.23. Plaintiffs should not be defeated in their redress of grievances by a confusing maze of statutes and judicial opinions instructing them whom to name as a defendant for review of a LIRC order or award.

---

[1] <u>Miller Brewing Co. v. LIRC</u> (<u>Miller I</u>), 166 Wis. 2d 830, 842, 480 N.W.2d 532 (Ct. App. 1992).

[2] <u>Miller Brewing Co. v. LIRC</u> (<u>Miller II</u>), 173 Wis. 2d 700, 704, 495 N.W.2d 660 (1993).

3

¶71 I therefore unequivocally and firmly recommend, as the Assistant Attorney General requested of the court, that the Worker's Compensation Advisory Council review this decision and propose to the legislature revisions to Wis. Stat. § 102.23 to clarify who must be included as a party in judicial review governed by Wis. Stat. § 102.03.[3]

¶72 The Wisconsin Worker's Compensation Advisory Council was created in 1975 to advise on policy matters concerning the development and administration of the workers' compensation law.[4] The Council is composed of five management, five labor, and three non-voting insurance members appointed by the secretary of the Department of Workforce Development and is chaired by a department employee. "The Council provides a vehicle for labor and management representatives to play a direct role in recommending changes in the workers' compensation law to the legislature."[5]

¶73 Until the Wisconsin Worker's Compensation Advisory Council and the legislature act, to avoid confusion I propose that LIRC consider adopting the practice of providing information with its order or award instructing the parties about who is to be named as an "adverse party" in subsequent review. "When an agency appends a notice to its decision and

---

[3] Letter dated Jan. 16, 2013, on file with the court. See majority op., ¶2 n.5.

[4] Wis. Stat. § 102.14(2).

[5] 17 Thomas M. Domer & Charles F. Domer, Wisconsin Practice Series, Workers' Compensation Law § 2.8 (2012-2013 ed.).

4

the notice clearly directs a party how to appeal, the notice should remove any confusion created by the statutes about whom to name and serve."[6]

¶74 The legislature and the court have similarly suggested elsewhere that the administrative entity lead the way. See, e.g., Wis. Stat. § 227.48(2) (providing that "[e]ach decision shall include notice of any right of the parties to petition for rehearing and administrative or judicial review of adverse decisions, the time allowed for filing each petition and identification of the party to be named as respondent."); Sunnyview Village, Inc. v. Wis. Dep't of Admin., 104 Wis. 2d 396, 412, 311 N.W.2d 632 (1981) (court recommends that governmental entities adopt practice of providing information on which government entity to be named and served as a respondent) (cited in All Star Rent A Car, Inc. v. DOT, 2006 WI 85, ¶46, 292 Wis. 2d 615, 716 N.W.2d 506 (court has "repeatedly exhorted administrative agencies to include with their decisions clear notices explaining the procedures that must be followed to obtain judicial review.")); Wis. Envtl. Decade, Inc. v. Pub. Serv. Comm'n, 84 Wis. 2d 504, 534, 267 N.W.2d 609 (1978) (court directs PSC to identify principal parties who must be served).

¶75 Action by LIRC would quell the confusion perpetuated by the majority opinion.

¶76 For the reasons set forth, I write separately.

---

[6] All Star Rent A Car, Inc. v. DOT, 2006 WI 85, ¶47, 292 Wis. 2d 615, 716 N.W.2d 506.

5

¶77 I am authorized to state that Justice ANN WALSH BRADLEY joins Part I of this concurring opinion.