HERMAX CARPET MARTS and Regent Insurance Company, Plaintiffs-Appellants,†

v.

LABOR & INDUSTRY REVIEW COMMISSION and Alan D. Nehls, Defendants-Respondents.

Court of Appeals

*No. 97–1119. Submitted on briefs May 4, 1998.—Decided June 23, 1998.*

(Also reported in 583 N.W.2d 662.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas M. Rohe* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.,* of Milwaukee.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

On behalf of the defendant-respondent Alan D. Nehls, the cause was submitted on the brief of *Dennis H. Wicht* of *Murphy, Gillick, Wicht & Prachthauser,* of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

CURLEY, J. Hermax Carpet Marts and Regent Insurance Company (collectively, "Hermax") appeal from a circuit court judgment affirming a Labor and Industry Review Commission (LIRC) order. LIRC's order reversed an administrative law judge's (ALJ) order which had denied Alan D. Nehls's claim for additional worker's compensation benefits. On appeal, Hermax claims that the circuit court erred in affirming LIRC's order because: (1) LIRC was required to, but did not conduct, a credibility conference; (2) Nehls, as a matter of law, exceeded his two choices of physicians under § 102.42(2), STATS.; and (3) LIRC's calculations are flawed. We disagree. Therefore, we affirm the circuit court judgment.

## I. BACKGROUND.

This worker's compensation case arises from an injury which Nehls suffered on November 13, 1988, while working as a carpet salesperson for Hermax.

Prior to the 1988 injury, in 1973, Nehls injured his back while working for the A. O. Smith Corporation. That injury persisted until Nehls was hospitalized in 1979. A three percent permanent partial disability was assessed and a fifty pound lifting restriction was imposed. Nehls was then laid off from A.O. Smith in 1981.

In 1985, Nehls began working for Hermax as a carpet salesperson. On November 13, 1988, Nehls was lifting one end of a 150 pound roll of carpet when his foot caught another roll of carpet. Nehls's body twisted and he fell, landing on his right shoulder. Nehls experienced lower back pain radiating to his right leg from this injury.

Following the 1988 injury, Nehls began to seek treatment from a number of different doctors. Initially,

Nehls went to the St. Francis Emergency Room, and was referred to Dr. Jeff Butler, an orthopedist. Dr. Butler subsequently referred Nehls to Dr. James D. Boblin, a neurologist, and Dr. Thomas J. Flatley, a spinal specialist. Dr. Boblin stated that he could find "no good physiologic explanation" for Nehls's symptoms. Dr. Flatley found that there were "no radiological changes" which explained Nehls's symptoms. Later, however, Dr. Flatley assessed Nehls with a three percent permanent partial disability based on his subjective level of pain. This three percent claim was conceded and paid by Hermax. Dr. Butler also apparently referred Nehls to Dr. D. P. Bogunovic. Dr. Bogunovic concluded that Nehls did not show any signs of permanent injury.

In December 1989, Nehls, without a referral, began treatment with Dr. A. W. Bhatti, an orthopedist. At some point in 1992, Nehls, also without a referral, was treated by Dr. Donovan, an osteopath. Eventually, Nehls, again without a referral, began treatment with Dr. Salvatore Fricano, a Family Health Plan doctor. Dr. Fricano referred Nehls to Dr. Sanford J. Larson, a neurosurgeon. Dr. Larson eventually performed a spinal fusion operation on Nehls on October 15, 1994.

In January 1994, Nehls was examined by Dr. Richard K. Karr at the request of counsel. Dr. Karr conducted a thorough examination and diagnosed Nehls as having a degenerative lumbar disc and facet disease, aggravated beyond its natural progression by the 1988 occupational injury. In July 1995, Nehls was also examined by an independent medical examiner, Dr. Dennis G. Brown. Dr. Brown also conducted a thorough examination and concluded that Nehls's back problems were related to a preexisting deteriorating condition, and that the 1988 injury did not precipitate,

aggravate or accelerate the condition beyond normal progression. Dr. Brown found that, in addition to the previously assessed disability, Nehls had a ten percent permanent partial disability related to the 1994 fusion surgery.

On July 25, 1995, DIHLR had a hearing over which an ALJ presided. Nehls was the only witness who testified at the hearing. The ALJ issued a written decision and, based upon Dr. Brown's report, found that there was no connection between Nehls's 1992 symptoms and his 1988 injury. The ALJ dismissed the claim for additional benefits. The decision included a WC–8019 form, in which the ALJ indicated that the credibility of the witness was not at issue.

Nehls appealed the ALJ's decision to LIRC, and LIRC reversed the ALJ's decision. LIRC found Dr. Karr's and Dr. Larson's medical opinions, with respect to the relationship between Nehls's prior medical condition and the 1988 injury, more credible and better supported than Dr. Brown's opinions. LIRC then found, based on Dr. Brown's report, that the 1988 injury resulted in ten percent permanent partial disability to the body as a whole, and awarded Nehls the appropriate level of disability payments. LIRC also found that Hermax was liable for the medical expenses and fees related to the spinal fusion surgery performed by Dr. Larson.

Hermax then appealed LIRC's decision by certiorari to the circuit court. Hermax made the same claims which it now makes on appeal, and the circuit court affirmed LIRC's decision. Hermax now appeals to this court.

## II. ANALYSIS.

### A. Credibility Conference.

"Where credibility of witnesses is at issue, it is a denial of due process if the administrative agency making a fact determination does not have the benefit of the findings, conclusions, and impressions of the testimony of each hearing officer who conducted any part of the hearing." *Shawley v. Industrial Comm'n,* 16 Wis. 2d 535, 541–42, 114 N.W.2d 872, 876 (1962) (citation omitted). Thus, whenever LIRC overrules an ALJ's credibility determination, LIRC must hold a credibility conference in order to obtain the ALJ's impressions concerning the witnesses' demeanor and credibility. *See Conradt v. Mt. Carmel Sch.,* 197 Wis. 2d 60, 70–73, 539 N.W.2d 713, 717–18 (Ct. App. 1995). LIRC must only hold a credibility conference, however, "[i]n situations where an examiner hears conflicting testimony and makes findings based upon the credibility of witnesses, and the commission thereafter reverses its examiner and makes contrary find- ings . . . ." *Braun v. Industrial Comm'n,* 36 Wis. 2d 48, 57, 153 N.W.2d 81, 85 (1967).

In the instant case, the credibility of testifying witnesses was not at issue in either the ALJ's or LIRC's decisions. The ALJ did not hear conflicting testimony and did not make, or base, its decision upon findings concerning the credibility of witnesses. In fact, on Department form WC–8019, which specifically asked the ALJ whether "Credibility is at Issue?" the ALJ checked the box marked "No." Although Nehls testified concerning his symptoms, it was the doctors, not Nehls, who were qualified to interpret those symptoms and to

617

make conclusions concerning the medical basis for those symptoms. Thus, the issue before the ALJ was not whether Nehls was a credible witness, but rather which medical opinion most accurately interpreted the facts to which Nehls had testified. Similarly, when LIRC reversed the ALJ's decision, it did not do so because it found Nehls to be a credible or incredible witness. Instead, LIRC simply found Dr. Karr's medical opinion to be a more persuasive interpretation of Nehls's medical condition than Dr. Brown's. Therefore, because credibility was not at issue in either the ALJ's or LIRC's decisions, a credibility conference was unnecessary.

### B. Choice of Physicians under § 102.42(2), STATS.

Hermax claims that the circuit court erred by misinterpreting § 102.42, STATS., and by finding that Hermax was liable for the medical expenses which Nehls incurred as a result of his treatment through the Family Health Plan and Dr. Fricano and Dr. Larson. We disagree.

Section 102.42, STATS., requires an employer to compensate an injured employee for his or her medical treatment, but restricts the employee to two choices of practitioners. Section 102.42(2)(a), STATS., states, in full:

> CHOICE OF PRACTITIONER. (a) Where the employer has notice of an injury and its relationship to the employment the employer shall offer to the injured employe his or her choice of any physician, chiropractor, psychologist or podiatrist licensed to practice and practicing in this state for treatment of the injury. By mutual agreement, the employe may have the choice of any qualified practitioner not

licensed in this state. In case of emergency, the employer may arrange for treatment without tendering a choice. After the emergency has passed the employe shall be given his or her choice of attending practitioner at the earliest opportunity. The employe has the right to a 2nd choice of attending practitioner on notice to the employer or its insurance carrier. Any further choice shall be by mutual agreement. Partners and clinics are deemed to be one practitioner. Treatment by a practitioner on referral from another practitioner is deemed to be treatment by one practitioner.

Following the 1988 accident, Nehls saw four different practitioners, as the term is defined in § 102.42(2)(a), for diagnosis and treatment. These practitioners were, in chronological order: (1) Dr. Flatley, Dr. Boblin; and Dr. Bogunovic, by referral from Dr. Butler; (2) Dr. Bhatti; (3) Dr. Donovan; and (4) Dr. Fricano, and Dr. Larson, by referral from the Family Health Plan.[1] Nehls, however, only sought reimbursement from Hermax for the expenses related to the first and last practitioners. Nehls did not seek reimbursement from Hermax for the expenses related to the second and third practitioners, Dr. Bhatti and Dr. Donovan.[2] Nev-

---

[1] As noted, in § 102.42(2)(a), STATS., "Partners and clinics are deemed to be one practitioner," and "[t]reatment by a practitioner on referral from another practitioner is deemed to be treatment by one practitioner."

[2] Hermax argues that the circuit court improperly assumed that Nehls did not make a claim for reimbursement for the expenses related to Dr. Bhatti and Dr. Donovan, and that LIRC improperly failed to make a finding of fact on that issue. Hermax, however, has not actually disputed LIRC's claim that Nehls did not seek reimbursement for Dr. Bhatti's and Dr. Donovan's statements, or presented us with any evidence showing that Nehls actually did seek reimbursement for these expenses.

ertheless, Hermax argues that, according to its interpretation of § 102.42, STATS., it is not liable for the expenses related to Nehls's treatment by Dr. Larson and Dr. Fricano, because those doctors constituted Nehls's fourth "choice" of practitioner. LIRC, however, argues that Nehls did not "choose" treatment by Dr. Bhatti or Dr. Donovan, for purpose of § 102.42, STATS., because he did not seek reimbursement from Hermax for the medical expenses related to those doctors. Therefore, according to LIRC, Dr. Larson and Dr. Fricano constituted Nehls's second choice of practitioner, and Hermax is liable for the medical expenses related to those doctors. We conclude that LIRC's interpretation of § 102.42 is correct, and that Hermax is liable for the medical expenses related to Nehls's treatment by Dr. Larson and Dr. Fricano.

Whether Dr. Larson and Dr. Fricano constituted Nehls's second choice of practitioner under § 102.42, STATS., is a question of statutory construction which we review *de novo*. *See State v. Ambrose*, 196 Wis. 2d 768, 776, 540 N.W.2d 208, 211 (Ct. App. 1995).

> The ultimate goal of statutory interpretation is to ascertain the intent of the legislature. The first step of this process is to look at the language of the statute. If the plain meaning of the statute is clear, a court need not look to rules of statutory construction or other extrinsic aids. Instead, a court should

Hermax has also not disputed LIRC's assertion, which is clearly supported in the record, that Nehls waived any claim to reimbursement for Dr. Bhatti's and Dr. Donovan's expenses at the ALJ hearing. Therefore, we conclude that Hermax's argument is insufficiently developed, and we decline to address it. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398–99 (Ct. App. 1995) (court of appeals need not address "amorphous and insufficiently developed" arguments).

simply apply the clear meaning of the statute to the facts before it. If, however, the statute is ambiguous, this court must look beyond the statute's language and examine the scope, history, context, subject matter and purpose of the statute.

*UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 281–82, 548 N.W.2d 57, 60 (1996) (citations omitted). "[A] statutory provision is ambiguous if reasonable minds could differ as to its meaning." *Id.* at 283, 458 N.W.2d at 61 (citation omitted) (alteration in original).

The phrase "choice of attending practitioner" found in § 102.42(2)(a), STATS., could reasonably be interpreted in two different ways. As Hermax argues, the statute could reasonably be interpreted to mean that an employee can only seek reimbursement from an employer for expenses related to the first two practitioners from whom he or she seeks treatment. According to this interpretation, the employee "chooses" a practitioner by seeking treatment from that practitioner, whether or not the employee ultimately seeks reimbursement from his or her employer for the expenses related to that treatment. By contrast, as LIRC argues, the statute could also be reasonably interpreted to mean that an employee can only seek reimbursement for expenses related to two practitioners, regardless of whether or not those practitioners are the first two practitioners from whom the employee seeks treatment. According to this interpretation, the employee "chooses" a practitioner by seeking reimbursement from the employer for the medical expenses related to that practitioner. Section 102.42 does not explicitly define the phrase "choice of attending practitioner," and the meaning of the phrase is not clear from the language of the statute standing alone. Therefore,

because reasonable minds could differ as to the statute's meaning, the statute is ambiguous and we must look beyond it in order to resolve the ambiguity.

When resolving statutory ambiguities, courts should advance the legislature's basic purpose in enacting the legislation. *See UFE*, 201 Wis. 2d at 288, 548 N.W.2d at 63. "The Worker's Compensation Act was created to ensure that employees who become injured or ill through their employment receive the prompt and comprehensive medical care that is necessary for their well-being." *Id.* (citations omitted). The Wisconsin Supreme Court has repeatedly held that the Act should be construed liberally in order to fully effectuate this purpose. *See id.*

In this case, Hermax's interpretation of § 102.42, STATS., clearly would not effectuate the remedial purpose of the Worker's Compensation Act. The purpose of § 102.42(2) is not to preclude employees from seeking treatment from more than two practitioners, it is to preclude an employee from being reimbursed for the expenses related to more than two practitioners. The fact that Nehls sought treatment from four practitioners should not preclude him from being reimbursed for the expenses related to two of those practitioners. According to Hermax's interpretation, however, because Nehls chose to be reimbursed for his first and fourth practitioners' expenses, as opposed to his first and second practitioner's expenses, Nehls would ultimately be compensated for only one practitioner's expenses. Hermax claims that this harsh result is necessary to prevent "unlimited doctor shopping" and "unnecessarily duplicative treatment." We are not persuaded.

LIRC's liberal interpretation of the statute will most clearly effectuate the purpose of the Worker's

Compensation Act, and will not lead to "unlimited doctor shopping" or "unnecessarily duplicative treatment." Under LIRC's interpretation, although employees may seek treatment from any number of physicians, they may only be reimbursed for two practitioners' expenses. If employees choose to seek treatment from more than two practitioners, the employees will be required to bear the cost of that additional treatment themselves. As a result, employees will still have a strong economic incentive to minimize unnecessary medical costs, and will be unlikely to pursue unneeded treatment. Employees will, however, have the right to seek treatment from as many practitioners as they desire, without forfeiting the right to be reimbursed for the expenses related to any two of those practitioners.

Because LIRC's interpretation of § 102.42, STATS., is reasonable and most clearly effectuates the remedial purpose of the Worker's Compensation Act, we adopt that interpretation. For the purposes of § 102.42, an employee "chooses" a practitioner by seeking treatment from that practitioner *and* by seeking reimbursement for that practitioner's expenses from the employee's employer or its insurance carrier. In this case, although Nehls sought treatment from four practitioners, he only sought reimbursement for the expenses related to two practitioners. Therefore, as a matter of law, he has not exceeded his choice of physicians under § 102.42.

### C. LIRC's Calculations.

Finally, Hermax claims that LIRC's calculations concerning the amount of Nehls's permanent partial disability are flawed. LIRC made a factual finding that Nehls's injury resulted in a ten percent permanent partial disability. Four months after the 1988 accident,

however, Dr. Flatley assessed a three percent permanent partial disability, which was conceded and paid by Hermax. Hermax argues that the three percent award which they had already paid should have been subtracted from the ten percent award, resulting in a total seven percent award. We are not persuaded.

LIRC's factual findings must be upheld if they are supported by relevant, credible and probative evidence. *See Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173–74 (1983). LIRC's factual finding that Nehls suffered ten percent permanent partial disability was in addition to the previous award of three percent permanent partial disability, and was supported by credible evidence found in Dr. Brown's medical reports. Therefore, it will be upheld.

LIRC specifically stated in its written decision: "Dr. Brown set disability due to the surgery at ten percent. The commission accepts such rating." LIRC, however, also stated in its written decision, "Dr. Brown further found that applicant has a ten percent permanent partial disability of the body as a whole related to the October of 1994, fusion surgery, *in addition to the previously assessed disability*." (Emphasis added.) Therefore, LIRC clearly meant to award ten percent permanent partial disability, in addition to the three percent award. LIRC's award was also supported by credible evidence because Dr. Brown stated in his second medical report, "*In addition to the previous assessed* disability, he [Nehls] has a ten (10) percent permanent partial disability of the body as a whole related to the October, 1994 fusion surgery." (Emphasis added.) Therefore, LIRC's award of ten percent permanent partial disability, in addition to the previous award of three percent permanent partial

624

disability, was clearly supported by credible evidence, and will be upheld.

*By the Court.*—Judgment affirmed.