**2020 WI App 74**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP1412

Complete Title of Case:

**JULIAN V. ROBLES,**

**PETITIONER-RESPONDENT,**

**V.**

**THOMAS HRIBAR TRUCK & EQUIPMENT, INC.,**

**RESPONDENT-CO-APPELLANT,**

**LABOR AND INDUSTRY REVIEW COMMISSION,**

**RESPONDENT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | October 7, 2020 |
| Submitted on Briefs: | June 26, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Reilly, P.J., Gundrum and Davis, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven C. Kilpatrick*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |
| Co-Appellant ATTORNEYS: | On behalf of the respondent-co-appellant, the cause was submitted on the brief of *Scott L. Schroeder* of *Scott L. Schroeder, S.C.*, Janesville. |

Respondent
ATTORNEYS: On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jeffrey Leavell, Kris Bartos* and *Danielle N. Rousset* of *Jeffrey Leavell, S.C.*, Racine.

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**October 7, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1412**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV1861**

**IN COURT OF APPEALS**

---

JULIAN V. ROBLES,

    PETITIONER-RESPONDENT,

V.

THOMAS HRIBAR TRUCK & EQUIPMENT, INC.,

    RESPONDENT-CO-APPELLANT,

LABOR AND INDUSTRY REVIEW COMMISSION,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Racine County: MICHAEL J. PIONTEK, Judge. *Reversed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

¶1    REILLY, P.J.   The Labor and Industry Review Commission (LIRC) and Thomas Hribar Truck & Equipment, Inc. (Hribar) seek review of the circuit court's reversal of LIRC's decision that Julian V. Robles (Robles) was discharged from his employment with Hribar due to an unprofessional interaction rather than due to his race or national origin in violation of the Wisconsin Fair Employment Act (WFEA).   As substantial evidence exists in the record to support LIRC's findings, we reverse the circuit court's order and affirm LIRC's order.

¶2    The facts in this case are highly contested.   LIRC made the following findings of fact after reviewing the submissions of the parties and the evidence presented at the hearing.   Hribar salvages and resells truck parts and is owned by Thomas Hribar.   Robles began working for Hribar in September 2013.   Robles was supervised by Thomas's brother, Arthur Hribar, and had very little interaction with Thomas, as Robles worked in a separate building, the "eBay" building.

¶3    On August 20, 2014, Robles was driving a forklift loaded with a box of parts from the eBay building to the building where Thomas was working.   After dropping off the box, Robles encountered Thomas who was driving a front end loader.   Thomas honked his horn at Robles to get his attention, as he wanted Robles to take some fairings with him back to the eBay building.   Thomas then pulled up along side Robles and started pointing at him, but it was loud in the building and Robles did not understand what Thomas was trying to tell him.   Robles "therefore continued to move his forklift in the opposite direction.   [Thomas] then yelled to get [Robles's] attention."   Robles "yelled back something to the effect of, 'You're not my boss and I'm not putting up with your bullshit.'"   Robles took the fairings and left.

¶4      Robles returned to the eBay building where Arthur asked him about the incident. Robles replied, "Your brother is a fucking asshole and him and I are going to have it out." Robles then "vented" to Arthur for a while and went back to work. "A minute or so later [Arthur] walked over and told [Robles], 'This is not going to work. You can't get along with my brother, you're threatening him that you're going to have it out with him, you're calling him names. I'm going to have to let you go.'" Robles was discharged from his employment.

¶5      Robles testified to a very different version of events. Robles agreed that when he encountered Thomas in the building, Thomas began pointing in his general direction, but he thought Thomas was gesturing toward another employee in the area so he began moving his forklift in another direction. At that point, Robles testified that "[i]nstead of telling me what to do," Thomas "called me a stupid Mexican, dumb ass wetback" and told Robles to "get the hell off his property." Robles said he responded to Thomas, "[Y]ou can go cuss to somebody fucking else. Don't be cussing at me. I'm not no little kid," and returned to the eBay building. According to Robles,

> By the time I got to the building, [Arthur] was outside. He asked me what happened. I told him what happened. I said your damn brother keeps cussing people off, this, that, he can't keeping do that. [Arthur's] like Dude, I got to fire you. He said I don't want to do that, man, but I have to. It's my brother's company.

¶6      On September 17, 2014, Robles filed a WFEA complaint against Hribar with the Equal Rights Division of the Wisconsin Department of Workforce Development (DWD). Robles alleged that he was discharged because of his race (Hispanic) and national origin (Mexican-American). DWD issued an initial determination, finding no probable cause to believe that Robles was "discriminat[ed]" against because of his race or national origin but found probable

cause to believe he was "terminat[ed]" because of his race or national origin. The Division of Hearings and Appeals administrative law judge (ALJ) held a hearing on September 21, 2016. The ALJ issued its final decision on May 18, 2017, concluding that Hribar discharged Robles because of his race and national origin.

¶7      Hribar petitioned for LIRC review, and Robles filed a cross-petition, seeking additional back pay. LIRC reversed the ALJ's decision and dismissed Robles's complaint, concluding that Robles was terminated because Arthur believed that Robles "had been disrespectful to and had threatened" Thomas. Robles filed a WIS. STAT. ch. 227 petition for judicial review in the circuit court. The circuit court reversed LIRC's decision, finding that LIRC, pursuant to WIS JI—CIVIL 215, "could not assess credibility of live witnesses in the same way the [ALJ] did." Hribar and LIRC appeal.

*Standard of Review*

¶8      On appeal, we review LIRC's decision and not that of the circuit court. ***Stoughton Trailers, Inc. v. LIRC***, 2007 WI 105, ¶26, 303 Wis. 2d 514, 735 N.W.2d 477. LIRC's findings of fact are conclusive on appeal as long as they are supported by credible and substantial evidence. ***Michels Pipeline Constr., Inc. v. LIRC***, 197 Wis. 2d 927, 931, 541 N.W.2d 241 (Ct. App. 1995); *see also* WIS. STAT. § 102.23(6) (2017-18).[1] "Substantial evidence is less of a burden than preponderance of the evidence in that any reasonable view of the evidence is sufficient." ***Bernhardt v. LIRC***, 207 Wis. 2d 292, 298, 558 N.W.2d 874 (Ct. App. 1996). Our role on appeal is to search the record for evidence supporting LIRC's factual determinations, not

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version.

to search for evidence against them. *See Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1097, 236 N.W.2d 255 (1975).

¶9    Where a party seeks review of an ALJ's findings or order, LIRC is not bound by the ALJ's decision, as LIRC, "on review, may either affirm, reverse or modify the findings or order in whole or in part, or set aside the findings and order and remand to [DWD] for further proceedings. Such actions shall be based on a review of the evidence submitted." WIS. STAT. § 111.39(5)(b). Our review, then, is of LIRC's findings, not those of the ALJ. *See Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶56, 349 Wis. 2d 234, 833 N.W.2d 665; *Anheuser Busch, Inc. v. Industrial Comm'n*, 29 Wis. 2d 685, 692, 139 N.W.2d 652 (1966). Our supreme court has instructed that this court "cannot ignore and jump over the findings of [LIRC] to reach those of the [ALJ] which were set aside." *See Anheuser Busch*, 29 Wis. 2d at 692. LIRC, not the ALJ, maintains the ultimate responsibility for fact-finding. *See* § 111.39(5)(b); *Falke v. Industrial Comm'n*, 17 Wis. 2d 289, 294-95, 116 N.W.2d 125 (1962).

*Analysis*

¶10    Hribar and LIRC both argue that LIRC properly determined that Hribar did not discharge Robles because of his race or national origin and that LIRC's findings of fact were supported by substantial evidence. Robles argues that LIRC erred when it made findings of fact that were contrary to the findings reached by the ALJ. Specifically, Robles faults LIRC for violating his due process rights by failing to "adequately conduct a credibility conference with the ALJ and failing to state why it reversed the ALJ's findings." Based on our standard of review, we disagree that LIRC's findings constitute error.

¶11     All of the findings of fact made by LIRC are supported by substantial evidence in the record. Arthur testified that Robles did not tell him of any racial comments made by Thomas prior to telling Robles that his employment was terminated. LIRC accepted that testimony and found that it cast doubt on the credibility of Robles's testimony, as LIRC "consider[ed] it unlikely that, had [Thomas] actually made such comments, [Robles] would have said nothing about them when asked to explain what happened." LIRC also considered the lack of verification, as Robles failed to bring witnesses of the incident to the hearing.

¶12     The one witness Robles did produce, Adalberto Garcia, testified that Thomas had "made a comment to him about being Mexican and going back to his country" approximately seven years prior. LIRC was "skeptical of Garcia's testimony given that he worked for Hribar for only two months before being discharged due to performance issues, and in light of the fact that he filed a discrimination complaint with the Equal Rights Division which was dismissed for lack of probable cause and then not appealed." LIRC also concluded that even if Garcia's testimony was credible, "an isolated remark made to Garcia in 2007 does not warrant a conclusion that [Thomas] was likely to use the … racial slurs alleged by [Robles] in 2014" without more contemporaneous testimony. Ultimately, LIRC concluded that even if Thomas had made the offensive racial comments to Robles, the record indicated that the decision to discharge Robles was made by Arthur as a result of Robles calling Thomas a "fucking asshole" and threatening to "have it out" with him and not for reasons related to Robles's race or national origin. Substantial evidence exists to support LIRC's findings.

¶13     Robles's main claim is that by overruling the ALJ's factual findings, LIRC violated his due process rights. In Wisconsin, the general rule is that where an agency acting as an appeal tribunal—here, LIRC—diverges from the hearing

examiner—the ALJ—as to material findings of facts based on witness credibility, "LIRC must hold a credibility conference in order to obtain the ALJ's impressions concerning the witnesses' demeanor and credibility." *Hermax Carpet Marts v. LIRC*, 220 Wis. 2d 611, 617, 583 N.W.2d 662 (Ct. App. 1998). The reason for this rule is that "[w]here credibility of witnesses is at issue, it is a denial of due process if the administrative agency making a fact determination does not have the benefit of the findings, conclusions, and impressions of the testimony of each hearing officer who conducted any part of the hearing." *Shawley v. Industrial Comm'n*, 16 Wis. 2d 535, 541-42, 114 N.W.2d 872 (1962). LIRC is required to provide an explanation for its disagreement with the ALJ in its memorandum opinion. *Carley Ford, Lincoln, Mercury, Inc. v. Bosquette*, 72 Wis. 2d 569, 574-75, 241 N.W.2d 596 (1976).

¶14 Robles does not argue that LIRC did not conduct a credibility conference and does not argue that LIRC did not provide a memorandum opinion explaining its disagreement with the ALJ's findings. Robles cannot do so, as the credibility conference was confirmed in the "NOTE" at the end of LIRC's decision:

> [LIRC] consulted the [ALJ] regarding his impressions of the demeanor of the witnesses. The [ALJ] indicated that he found the [Robles] testimony to be credible, but did not share any demeanor impressions that affected his assessment of the complainant's credibility. As indicated above, the [ALJ] stated that he considered the complainant's witness, Mr. Garcia, to be calm and matter-of-fact. However, as noted in the memorandum opinion above, [LIRC] found Mr. Garcia's testimony less than persuasive. The [ALJ] did not share any demeanor impressions regarding the respondent's witnesses.

Robles claims that "LIRC simply did not have the kind of credibility conference required for Robles to have due process," asserting that it was LIRC's burden to "investigate the ALJ's demeanor impressions" and suggesting questions that he believed LIRC should have posed to the ALJ at the credibility conference. Robles

provides no legal authority to support his claim that the law requires such an investigation requirement or a standardized procedure pursuant to which the hearing is to be conducted.

¶15    Robles's argument is similar to the argument made in *Hakes v. LIRC*, 187 Wis. 2d 582, 523 N.W.2d 155 (Ct. App. 1994).  In *Hakes*, a worker's compensation case, the claimant advocated that due process required, among other things, "a standardized procedure or standardized set of questions" for LIRC to follow when consulting with the ALJ on credibility determinations.  *Id.* at 586-87.  Our supreme court rejected a standardized procedure, explaining that it goes "beyond the dictates" of prior case law in *Shawley*, 16 Wis. 2d at 541-42, and *Transamerica Insurance Co. v. DILHR*, 54 Wis. 2d 272, 284, 195 N.W.2d 656 (1972):

> Under *Shawley* and *Transamerica*, due process requires only that the commission consult with the hearing examiner and submit a memorandum opinion explaining its basis for rejecting the hearing examiner's findings.…  The procedure [Hakes] proposes seeks to delve into the mental processes the commission used in making its determinations of fact.  The law, however, does not require this.  In fact, the supreme court has specifically noted that "administrative agencies ordinarily should not be harassed by judicial inquiry directed toward ascertaining how they performed their adjudicative function in a particular case."  The law simply does not support Hakes' assertion that the commission's factual determinations should be subject to more rigorous procedures.

*Hakes*, 187 Wis. 2d at 587-89 (citation omitted).  The court clarified that "the commission, not the hearing examiner, is vested with the responsibility of making credibility determinations" and that "[t]he hearing examiner may make initial determinations on witness credibility, but these determinations are subject to the commission's independent review."  *Id.* at 589.

¶16 The law requires that LIRC hold a credibility conference and that LIRC explain its disagreement with the ALJ's credibility determinations; LIRC fulfilled both requirements. *See id.* at 587-89. LIRC found Garcia's testimony not credible and determined that Thomas's and Arthur's testimony held greater weight than Robles's testimony. LIRC, not this court or the circuit court, is charged with making those credibility determinations. *See id.* at 589; *see also **Anheuser Busch***, 29 Wis. 2d at 692 ("[Courts] cannot ignore and jump over the findings of [LIRC] to reach those of the [ALJ] which were set aside."). Accordingly, we reverse the circuit court's order and affirm LIRC's order.

*By the Court.*—Order reversed.