COURT OF APPEALS
DECISION
DATED AND FILED

December 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1649**

STATE OF WISCONSIN

Cir. Ct. No. **2021CV1225**

IN COURT OF APPEALS
DISTRICT I

KIMBERLY D. HASSELL,

PETITIONER-APPELLANT,

V.

LABOR & INDUSTRY REVIEW COMMISSION,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: WILLIAM SOSNAY, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kimberly D. Hassell, *pro se*, appeals an order of the circuit court affirming the decision of the Labor and Industry Review Commission

(LIRC), which determined that the University of Wisconsin-Milwaukee (UWM) did not unlawfully discriminate against Hassell, in violation of the Wisconsin Fair Employment Act (WFEA). Upon review, we affirm.

## BACKGROUND

¶2 Hassell was hired by UWM as an instructor in the Criminal Justice Department in January 2004. She was promoted to associate professor in 2010.

¶3 The position of associate professor has three "principle components": teaching, research, and service. The teaching component involves teaching the classes assigned each semester. The research component means to engage in "scholarly activities" such as writing reports and publishing journal articles or books, as well as crafting research methodologies. The service component involves service to the department, the university, the community, and the profession, and includes such activities as serving on academic committees, editing journals, or assisting with research projects for organizations in the community.

¶4 In addition to those principle components, associate professors are also expected to apply for grants to fund their research. A portion of any grants received goes to UWM.

¶5 Performance reviews for faculty members at UWM, including associate professors, are conducted by an executive committee made up of tenured professors from that particular department. The review process in the Criminal Justice Department required that each faculty member submit an activity report to its Executive Committee relating to those principle components of teaching, research, and service. The Executive Committee then used a point scale to rate each

faculty member: a score of 0 indicates inadequate performance; a score of 1 indicates adequate performance; and a score of 2 indicates outstanding performance.

¶6     The evaluations were used by the Executive Committee to make recommendations regarding appointment renewal, salary increases based on merit, and tenure. These recommendations were sent to Stan Stojkovic, the Dean of the Helen Bader School of Social Welfare, which encompasses the Criminal Justice Department. Dean Stojkovic then made the ultimate decision as to whether to follow the recommendations of the Executive Committee.

¶7     Hassell's evaluations for 2004 through 2012 show that she received a score of 1 or higher in each of the principle component categories every year. There were no scores reported from 2013 through 2016, as there were no pay increases based on merit during that time frame. However, in 2014, the Executive Committee and Dean Stojkovic deemed Hassell to be a "solid performer" for purposes of receiving a 1% annual salary increase that was offered to all UWM faculty.

¶8     In August 2013, Hassell emailed Dean Stojkovic regarding concerns about perceived salary disparities between male and female colleagues. Dean Stojkovic responded via email, explaining that there were some factual inaccuracies in Hassell's email regarding a salary increase that a male colleague had received. Dean Stojkovic also corrected Hassell's perception that the funds used to compensate a colleague at an academic conference could be put toward curing salary discrepancies, explaining that those funds had been combined from several departments to make a one-time payment, which is not possible to do for ongoing salary expenses.

¶9     Dean Stojkovic further noted in his response that Hassell's concerns had been addressed at a faculty meeting in May 2013, which Hassell had not

3

attended. He stated that he anticipated that salary adjustments would be made that would resolve her concerns, at least in part.

¶10    In the fall of 2016, UWM allocated funds for one-time lump sum bonus payments to long-term employees who had not received regular "merit-based compensation adjustments" over a number of years, to support the retention of such employees. Employees who began their employment prior to July 1, 2015 and who were deemed to be "solid performers" were eligible for the lump sum bonus.

¶11    The executive committees of each department were to determine whether faculty members were solid performers for purposes of being paid the lump sum bonus. A directive from UWM stated that the executive committees could consider performance reviews, provided they had been conducted after July 1, 2015. Since the Criminal Justice Department had not conducted performance reviews since 2012, however, it was decided at a meeting prior to the vote that the determination should include consideration of "brag sheets," similar to the activity sheets for evaluations, to be submitted by each faculty member describing their academic achievements. Hassell was present at that meeting, and did not object to the adoption of this procedure.

¶12    The Executive Committee determined that Hassell was not a solid performer, and she was thus denied the lump sum bonus payment. All other faculty members in the Criminal Justice Department—both male and female—were deemed to be solid performers, and received the lump sum bonus.

¶13    Hassell filed a complaint with the Equal Rights Division (ERD) of the Department of Workforce Development in November 2016, alleging discrimination based on sex with regard to compensation and other terms of employment, in violation of the WFEA. She also alleged that the denial of the lump sum bonus was

retaliation for her email to Dean Stojkovic in August 2013 regarding perceived salary inequities.

¶14 Hassell explained that her work conditions had "changed" after that email exchange with Dean Stojkovic. She stated that she "became isolated," in that she was not included on marketing materials for UWM, and was not included in any email exchanges outside of formal faculty meetings. She believed Dean Stojkovic had engaged in "heightened scrutiny" of her outside consulting work, and also noted that she was denied a sabbatical in 2014. She attributed these perceived changes in conditions to her complaint about discriminatory salary practices.

¶15 An investigator from ERD made an initial determination in May 2017 that there was no probable cause that UWM had violated the WFEA. Hassell appealed that determination, and a hearing was held before an administrative law judge (ALJ) in May 2018.

¶16 Witnesses testifying at the hearing included Dean Stojkovic, who testified regarding his email exchange with Hassell in August 2013 about the perceived salary inequities. Dean Stojkovic further stated that he met with Hassell twice regarding this issue—once before she sent her email and once after it was sent—which he described as being not "professional meetings" but rather confrontations that turned into "screaming matches." Due to Hassell's "tone" during these confrontations, and "because her accusations were 'full of errors,'" Dean Stojkovic testified that he responded to Hassell's concerns via email, as described above, approximately five days after Hassell sent her email to him.

¶17 Testimony was also received from Tina Freiburger, a member of the Executive Committee for the Criminal Justice Department and Chair of the Department at the time the lump sum bonuses were awarded in 2016. Freiburger

testified that with regard to the lump sum payment, the vote was 2-1 that Hassell was not a solid performer. She noted that Dean Stojkovic did not participate in the Executive Committee votes or discussions during this process.

¶18 Freiburger provided several reasons for her vote that Hassell was not a solid performer. The primary factor for her vote was an incident that occurred a few months prior to the vote: Hassell refused to teach one of her assigned classes in person. About a month before the class was to start, Hassell had demanded to teach the class online instead. Freiburger stated that this resulted in a loss of enrollment for the class and added extra work for Freiburger, as the department chair, to coordinate the logistics for this change. Freiburger felt this was a "major lapse in duties" by Hassell.

¶19 Freiburger also testified about other concerns regarding Hassell. Specifically, Freiburger observed that Hassell had not received any grants in 2015 or 2016; that Hassell's attendance at faculty meetings had been "sporadic at best"; and that she spent less time on campus than her colleagues.

¶20 The ALJ determined that there was no evidence to support Hassell's allegations that she was denied the lump sum bonus or any other merit-based salary increases because of her gender or in retaliation to her accusations of salary inequities. Hassell appealed that decision to LIRC, which affirmed the ALJ's determination.

¶21 Hassell then appealed LIRC's decision to the circuit court. The circuit court affirmed LIRC, finding that its decision was support by substantial evidence in the record. This appeal follows.

6

## DISCUSSION

¶22　LIRC's findings and orders relating to the WFEA are subject to judicial review pursuant to WIS. STAT. ch. 227 (2019-20).[1] *See* WIS. STAT. § 111.395.  On appeal, this court "substantively review[s] LIRC's decision and not that of the circuit court." *Knight v. LIRC*, 220 Wis. 2d 137, 147, 582 N.W.2d 448 (Ct. App. 1998).

¶23　We review LIRC's legal conclusions *de novo*. *Mueller v. LIRC*, 2019 WI App 50, ¶17, 388 Wis. 2d 602, 933 N.W.2d 645.  However, we will uphold LIRC's findings of fact as long as there is "credible and substantial evidence in the record on which reasonable persons could rely in reaching the same findings." *Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665. An "employer's motivation" in an employment discrimination case is a factual determination.  *Currie v. DILHR*, 210 Wis. 2d 380, 386, 565 N.W.2d 253 (Ct. App. 1997).

¶24　Indeed, the issues raised by Hassell on appeal are all essentially based on the premise that LIRC's factual findings were not based on credible and substantial evidence.[2]　Credible evidence is that which is "sufficient to exclude speculation or conjecture." *Bumpas v. DILHR*, 95 Wis. 2d 334, 343, 290 N.W.2d 504 (1980).  "Evidence that is relevant, probative, and credible, and which is in a quantum that will permit a reasonable factfinder to base a conclusion upon it," is

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Additionally, Hassell argues that LIRC erred in failing to hold a credibility conference. However, as the State points out, a credibility conference is only required when LIRC overrules the ALJ's credibility determinations. *See Hermax Carpet Marts v. LIRC*, 220 Wis. 2d 611, 617, 583 N.W.2d 662 (Ct. App. 1998).  That was not the case here.

substantial evidence. ***Princess House, Inc. v. DILHR***, 111 Wis. 2d 46, 54, 330 N.W.2d 169 (1983). The burden of showing that LIRC's decision was not supported by credible and substantial evidence "is on the party seeking to set aside LIRC's findings and order." ***Xcel Energy Servs., Inc.***, 349 Wis. 2d 234, ¶48.

¶25 The rule relating to credible and substantial evidence "affords significant deference" to LIRC's factual findings. ***Hilton ex rel. Pages Homeowners' Ass'n v. DNR***, 2006 WI 84, ¶25, 293 Wis. 2d 1, 717 N.W.2d 166. In fact, "the weight and credibility of the evidence are for the agency, not the reviewing court, to determine." ***Id.*** (citations omitted).

¶26 In its decision, LIRC found that the evidence demonstrated that UWM's decision not to award Hassell the lump sum bonus was not motivated by her gender or in retaliation to her complaint regarding perceived salary disparities. First, with regard to her gender discrimination argument, LIRC observed that the testimony of Freiburger—the Chair of the Criminal Justice Department, a member of the Executive Committee who voted on the lump sum payments, and, incidentally, a female—provided several "legitimate non-discriminatory reasons" for her vote against awarding the payment to Hassell. Chief among those reasons was Hassell's demand to teach her assigned class online instead of in person, which occurred shortly before the Committee met to determine the award of the lump sum payments, as discussed above. LIRC also noted that everyone else in the Department who was eligible for a lump sum bonus, which included both male and female employees, was awarded the bonus.

¶27 LIRC further discussed the gender discrimination allegation as it related to Hassell's assertion that a certain male colleague, whose brag sheet was very similar to hers, had received the lump sum payment while she had not. LIRC

found that Hassell failed to elicit any testimony from Freiburger as to why she voted for the male colleague to receive the payment, and not Hassell. Hassell, on the other hand, points to the testimony of a witness who testified on her behalf: Dr. Ricky Lane Lovell, a former faculty member from the Criminal Justice Department who retired in 2013. Lovell testified that after reviewing both brag sheets after the lump sum payment decision, Hassell's sheet was "comparable to or exceeded" the male colleague's sheet.

¶28    LIRC found that the evidence did not provide an adequate comparison of the brag sheets to sufficiently support Hassell's contention that she should have received the same "solid performer" rating as her male colleague. Weighing the evidence and making credibility determinations are firmly within the province of LIRC. *See id.*

¶29    Hassell also asserts that LIRC failed to recognize that the Criminal Justice Department did not follow set procedures for determining solid performance in the context of awarding the lump sum payments, namely, those used for performance evaluations. In contrast, Freiburger testified that there was no set procedure in the Department for making such awards that was in accord with the directive from UWM's administration. Freiburger stated that the Department therefore held a faculty meeting in September 2016 to discuss the process for determining award distribution. She said that Hassell attended that meeting, and that she did not object to the procedure adopted of having the faculty members submit brag sheets which, in effect, were similar to the activity sheets used for performance evaluations.

¶30    Hassell contended that she had no opportunity to object at this meeting. However, LIRC rejected this contention as "unpersuasive," based on

Freiburger's testimony that everyone at that meeting "had a chance to talk." Again, this weighing of the evidence and making credibility findings is firmly within LIRC's province. *See id.*

¶31 LIRC ultimately determined that the evidence "[did] not support a conclusion that [Hassell] was denied the lump sum compensation award because of her sex," which is supported by the evidence in the record. *See Xcel Energy Servs., Inc.*, 349 Wis. 2d 234, ¶48. LIRC further observed that Hassell "essentially conceded" at the hearing that her gender was not a factor in that decision, noting that Hassell instead testified that the decision not to award her the lump sum bonus must have been due to "retaliatory behavior," because there was "no other explanation she could think of" for denying her the bonus.

¶32 However, LIRC concluded that the evidence did not support that allegation either. LIRC pointed out that the "protected activity" under WFEA—Hassell's complaint regarding perceived salary inequities—had occurred three years prior to the vote about the lump sum payments, and that this was "not close enough in time to infer a causal connection between the two events." Furthermore, LIRC noted that her complaint regarding salary inequities was made to Dean Stojkovic, who was not a member of the Executive Committee, nor was he involved in the vote regarding the lump sum payments. Although Dean Stojkovic ultimately approved the recommendations of the Executive Committee regarding the payments, including the denial for Hassell, there was testimony at the hearing from Lovell—Hassell's witness—that deans do not usually "challenge" ratings given by executive committees.

¶33 Much of Hassell's argument on appeal focuses on Dean Stojkovic's denial of her request for a sabbatical in 2014 as an example of part of a "pattern" of

retaliation. However, in a letter to Hassell explaining that denial, Dean Stojkovic stated that the reason for the denial was that her sabbatical request to continue outside consulting work did "not have a clear relation to [her] duties to the University." He explained that the purpose of a sabbatical from UWM is to "enable recipients to be engaged in intensive study in order to become more effective teachers and scholars and to enhance their services to the [U]niversity," namely, the "principle components" of her associate professor position: teaching, research, and service. He further stated that such outside consulting is not considered to be research in terms of that principle component.

¶34 Hassell nevertheless contends that the denial demonstrates Dean Stojkovic's discriminatory pay practices, because he made note of the "considerable" amount of income she had generated through those outside consulting projects. However, as Dean Stojkovic explained in the letter, his concern was that with the amount of outside consulting Hassell was doing, her focus on that had "detracted too much from [her] duties on campus."

¶35 In fact, Dean Stojkovic testified that many faculty members engage in outside consulting projects, and he acknowledged that such work could be beneficial to UWM. However, he stated that there must be a "balance" between that work and the "ordinary expectations" for faculty members, and he believed that Hassell lacked that balance.

¶36 Similarly, Freiburger testified that generally no one objected to colleagues performing outside consulting work "as long as [those faculty members] are still performing their work duties." LIRC considered this one of the "non-discriminatory" reasons that Freiburger voted to deny Hassell the lump sum payment. This is a reasonable finding based on the evidence, in that it can be

inferred that both Dean Stojkovic and Freiburger felt that Hassell had placed a priority on supplementing her income with outside consulting projects at the expense of her job duties at UWM. *See id.*; *see also Vocational, Tech. & Adult Educ., Dist. 13 v. DILHR*, 76 Wis. 2d 230, 240, 251 N.W.2d 41 (1977) ("If … different inferences can reasonably be drawn from the evidence, then a question of fact is presented and the inference actually drawn by [LIRC], if supported by any credible evidence, is conclusive."). Thus, LIRC's finding that all of these facts "weigh[ed] against any finding of retaliation" is supported by the evidence. *See Xcel Energy Servs., Inc.*, 349 Wis. 2d 234, ¶48.

¶37 As far as Hassell's other assertions relating to her feelings of isolation, heightened scrutiny of her work, and being excluded from marketing materials, LIRC stated that her allegations were generally too vague to allow for findings to be made, and certainly did not demonstrate a basis that any of the alleged conduct was the result of discrimination or retaliation. In sum, LIRC found that even if Hassell was "treated unfairly" and her "academic contributions and achievements were not fully recognized" during the process of awarding the lump sum payment, the evidence does not support a conclusion that this occurred because of her gender or in retaliation for her complaint regarding perceived salary inequities. In short, it found no violations of the WFEA, and the evidence supports this finding.[3] *See id.*

¶38 Therefore, we conclude that Hassell has not met her burden of demonstrating that LIRC's decision was not based on credible and substantial

---

[3] Hassell also argues that LIRC "accepted UWM's legal counsel's statements as fact without proper investigation of the evidence," demonstrating "favoritism toward UWM" and thus violating her due process rights. However, Hassell's argument is, in effect, that the evidence in this case should have been weighed differently, such that it would be viewed more favorably toward her. As we have determined that LIRC's decision was based on credible and substantial evidence that was properly weighed by LIRC, we reject this argument. *See Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665.

evidence. *See id.* Accordingly, we affirm the circuit court's order affirming that decision.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.