COURT OF APPEALS
DECISION
DATED AND FILED

May 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP210**

Cir. Ct. No. 2022CV2468

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

CHAREESE D. WILSON,

PLAINTIFF-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION AND DEPARTMENT OF WORKFORCE DEVELOPMENT,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: WILLIAM SOSNAY, Judge. *Affirmed in part, reversed in part, and cause remanded with directions.*

Before Donald, P.J., Geenen and Colón, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. Chareese D. Wilson appeals from an order of the circuit court affirming a decision of the Labor and Industry Review Commission (LIRC), finding Wilson eligible for Pandemic Unemployment Assistance (PUA), *see* 15 U.S.C. § 9021, for weeks thirteen through twenty of 2020 and finding Wilson ineligible for PUA beginning in week twenty-one of 2020. On appeal, Wilson argues that her case should be returned to the Department of Workforce Development (DWD) to allow the DWD to re-evaluate her eligibility for PUA beginning with week twenty-one of 2020. For the reasons set forth below, we affirm in part, reverse in part, and remand for further factual development and consideration of Wilson's eligibility for PUA beginning in week twenty-one of 2020.

## BACKGROUND

¶2 Wilson was diagnosed with fibromyalgia and chronic myofascial pain syndrome, and she receives social security disability income (SSDI) benefits as a result of her health conditions.

¶3 On August 20, 2019, Wilson began working for Lyft as a driver. Her hours varied based on what her health would allow her to work each week, but she worked at most twenty hours per week and earned approximately $1,000 per month driving for Lyft.

¶4 Wilson continued to drive for Lyft until March 25, 2020, when the Department of Health Services (DHS) issued Emergency Order #12 Safer at Home Order in response to the public health emergency created by COVID-19. The DHS issued a second order, known as Emergency Order #28, after the first order expired. These orders were in effect from March 25, 2020, until May 13, 2020, and they generally instructed "[p]eople at high risk of severe illness from

COVID-19 … to stay in their home or residence to the extent possible except as necessary to seek medical care." As of May 24, 2021, however, Wilson had not returned to driving for Lyft.

¶5    Also in response to the COVID-19 public health emergency, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act. *See* 15 U.S.C. §§ 9001-9132. The CARES Act provided for, among other things, payments to workers that were not eligible for traditional unemployment benefits and who were unable to work as a direct result of the COVID-19 public health emergency. These payments provided for under the CARES Act are known as PUA. *See* 15 U.S.C. § 9021.

¶6    Wilson filed her first claim for PUA on July 19, 2020, and requested benefits with a start date of March 17, 2020. On the form, Wilson stated that her type of self-employment was as an independent contractor, and her type of ownership was an LLC partnership and provided "Lyft" as the name of her partner. In response to the question, "How did the COVID-19 pandemic DIRECTLY cause you to become unemployed," Wilson responded, "None of the above," and instead, Wilson provided "additional explanation for cause of unemployment" as: "Due to COVID and shelter in place could no longer drive. I also have underlying health issues that put me in a higher category of contracting COVID-19."

¶7    On November 10, 2020, the DWD denied Wilson's claim, stating that Wilson "was not unemployed, partially unemployed or unable or unavailable to work due to one of the 11 qualifying COVID-19 reasons listed in section 2102(A)(3)(A)(II)(I) of the CARES Act." In other words, the DWD found that

Wilson had not suffered a PUA-covered job loss and found Wilson ineligible for PUA beginning in week thirteen of 2020.

¶8 Wilson appealed the DWD's determination on January 27, 2021.[1] For the appeal reason, Wilson provided:

> I receive SSDI, was worked part time for Lyft pandemic hit. 3/23/2020. I did. As I am on [shelter] in place. Don't qualify for UI. 6/30/2019 apply for PUA denied. Called repeatedly, spoke with UI, PUA, PUA supervisors. Told different information. Told I qualify for PUA. Told that no I don't qualify, told to submit proof of gig earnings[.] Told problem was in 1 wrong answer supervisor will fix, be updated, approved. Told NOT file appeal always denied. I am struggling financially. Last call hung up on.

¶9 After filing her appeal, Wilson completed a Re-Activate Pandemic Unemployment Assistance Application on March 26, 2021. In response to the question of how COVID-19 directly caused her to become unemployed, Wilson selected the option indicating, "You are self-employed (including an independent contractor or gig worker) and experienced a significant reduction of services because of the COVID-19 public health emergency." She again provided an additional explanation for the cause of her unemployment:

> I'm on SSDI. I have worked part time to with Lyft supplement my income. I began driving part time for LYFT (self employed) since 9/1/2019. I did so until Gov. Evers issued the shelter in place rule 3/23/20, stopped Lyft driving, ineligible for Regular unemployment due to SSDI. For reasons unbeknownst to me PUA denied, even though I qualify per SSDI and self employment.

---

[1] Wilson indicated in her appeal that she was represented by counsel, but after receiving correspondence from the DWD, counsel informed the DWD that she did not in fact represent Wilson and requested to be removed from future correspondence.

¶10 On March 31, 2021, Wilson filed a second Re-Activate Pandemic Unemployment Assistance Application. On this form, Wilson selected "[n]one of the above or not COVID-19 related" in response to the question of how the COVID-19 pandemic directly caused her unemployment, and she again provided an additional explanation for the cause of her unemployment as: "Governor Evers Shelter In Place Declaration, I am an SSDI Recipient which I have been told assures my ability to receive PUA BENEFITS."

¶11 On April 27, 2021, Wilson received a letter from the DWD to inform her that the qualifying reasons for PUA had been expanded, and the letter instructed her to complete and return the enclosed form.[2] Wilson completed the form and returned it on April 29, 2021. On this form, Wilson selected all of the following reasons as applicable to her eligibility for PUA:

> I am unable to reach my place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency.
>
> My place of employment is closed as a direct result of the COVID-19 public health emergency.
>
> I am self-employed (including an independent contractor and gig worker) and experienced a significant reduction of my customary or usual services because of the COVID-19 public health emergency.
>
> I was denied continued unemployment benefits because I refused to return to work or accept an offer of work at a worksite that, in either instance, is not in compliance with local, state, or national health and safety standards directly related to COVID-19. This includes but is not limited to, those related to facial mask wearing, physical distancing

---

[2] Wilson received this letter because the DWD identified Wilson as someone who previously applied for PUA benefits, was denied, and whose eligibility may have changed with expansion of "the reasons under which individuals may qualify for PUA."

> measures, or the provision of personal protective equipment consistent with public health guidelines.
>
> I am an employee and my hours have been reduced or I was laid off as a direct result of the COVID-19 public health emergency.
>
> None of the above apply to me.

Wilson further wrote in the margin that "I am on SSDI as well and was working part time as a gig worker for Lyft. Not able to sustain duties due to shelter in place order by Gov. Evers of WI." She also indicated that the reasons she selected applied to the first day of her job loss indicated on her original PUA initial claim.

¶12 On May 12, 2021, Wilson was mailed a hearing notice for her appeal. The notice indicated that Wilson was to appear by telephone on May 24, 2021, and the following issue would be covered: "Is the claimant a covered individual and eligible for pandemic unemployment assistance (PUA)? Pub. L. 116-136; 20 CFR 625." The notice further indicated the timeframe as "beginning week of issue: 12/20."

¶13 An administrative law judge (ALJ) heard Wilson's appeal on May 24, 2021. Prior to taking Wilson's testimony, the ALJ explained the process for the hearing and asked Wilson if she had any questions, and she answered, "No[.]" The ALJ then proceeded to question Wilson and stated that the "focus" of the hearing was "whether you have any of the COVID-19 qualifying reasons related to that pandemic unemployment assistance benefits."

¶14 Wilson testified:

> [W]hen Governor E[v]ers did the shelter in place here in Wisconsin I sheltered in place and also with the shelter in place because there was not a lot of, um, because everyone was sheltering in place. There is basically like no driving to be done. Like the airports were shutdown, businesses. Like essential businesses were the only thing that were

> opened. But also because I do have a chronic health, um, condition I also took it to heart as well because I mean the governor tells you to shelter in place then don't go out. That's exactly what I did.

Wilson further testified that, even though she had seen her primary care doctor, she had never had a doctor tell her that she needed to quarantine due to COVID-19 and she quarantined "based off of what the governor said." She also explained that Lyft told her in March 2020 to stop driving because she was considered a non-essential worker under the order but that Lyft never followed up on that communication.[3] Wilson also stated that she conducted her own research on PUA and "was told that I qualified because I'm on Social Security disability."

¶15    At the conclusion of the hearing, the ALJ asked Wilson if there was any additional information that she wished to have considered, and Wilson responded:

> [J]ust the fact like I said I called and I spoke with numerous supervisors and adjudicators. They all told me something different. The majority of them told me that I did qualify for PUA. Is there anything that says if you're on Social Security or anything that you do automatically qualif[y] for PUA because I got a statement saying that I did.

¶16    The ALJ affirmed the DWD's determination denying Wilson's claim for PUA. The ALJ's decision provided that "[t]he issue to be decided is whether, beginning in week 12 of 2020, the claimant was unemployed, partially unemployed, unable to work, or unavailable for work as a direct result of the COVID-19 health emergency." The ALJ stated:

---

[3] The ALJ pointed out at the hearing that the order actually specifically listed Lyft drivers as essential workers, and Wilson acknowledged that she had also been informed of the same.

The claimant contends that she is eligible for PUA because her underlying health conditions make it unsafe for her job. However, the claimant was not advised by a medical professional to self-quarantine. She made the decision not to continue working as a driver out of general concerns related to COVID-19. While the claimant's actions may be reasonable under the circumstances, the claimant does not meet any of the reasons listed in the CARES ACT that would qualify her for PUA.

¶17     Wilson filed an appeal of the ALJ's decision to LIRC, and on March 17, 2022, LIRC issued a decision finding Wilson eligible for PUA for weeks thirteen through twenty of 2020 but finding Wilson ineligible beginning in week twenty-one of 2020.[4] LIRC found Wilson eligible for PUA under 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(ee) because "[t]he Emergency Safer at Home Orders, while in effect, operated as quarantine orders with respect to the claimant given her underlying serious health conditions." LIRC continued, "However, once those orders were invalidated by the Supreme Court, the claimant was no longer subject to a quarantine imposed as a direct result of the COVID-19 public health emergency."[5] LIRC further considered Wilson's eligibility under two other categories and found Wilson ineligible under both. Wilson asked LIRC to reconsider its decision, and LIRC denied Wilson's request.

¶18     Wilson subsequently sought judicial review of LIRC's decision, where she argued that "the claim-filing process administered ignored federal requirements" and "she has a right to notice and opportunity to file a second PUA

---

[4] For the sake of clarity, we note that weeks thirteen through twenty of 2020 correspond to March 22 to May 16, 2020, and week twenty-one of 2020 begins on May 17, 2020.

[5] *See* **Wisconsin Legislature v. Palm**, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900 (invalidating Emergency Order #28).

initial claim after her first PUA initial claim was denied." The circuit court upheld LIRC's decision, and Wilson appeals.

## DISCUSSION

¶19     In this case, we review LIRC's decision finding Wilson eligible for PUA for weeks thirteen to twenty in 2020 and ineligible beginning in week twenty-one. *See Operton v. LIRC*, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426 ("When there is an appeal from a LIRC determination, we review LIRC's decision rather than the decision of the circuit court." (citation omitted)).

¶20     In reviewing LIRC's decision, we "may set aside the order only upon one or more of the following grounds": (1) "[t]hat [LIRC] acted without or in excess of its powers," (2) "[t]hat the order was procured by fraud," or (3) "[t]hat the findings of fact by [LIRC] do not support the order." WIS. STAT. § 108.09(7)(c)6. (2021-22).[6]

¶21     "The findings of fact made by [LIRC] acting within its powers shall, in the absence of fraud, be conclusive." WIS. STAT. § 108.09(7)(c)1. We may not "substitute [our] judgment for that of [LIRC] as to the weight or credibility of the evidence on any finding of fact." Sec. 108.09(7)(f). "The court may, however, set aside [LIRC]'s order and remand the case to [LIRC] if [LIRC]'s order depends on any material and controverted finding of fact that is not supported by credible and substantial evidence." *Id.* "Credible and substantial evidence is that which is

---

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

'sufficient to exclude speculation or conjecture.'" *Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665 (citation omitted).

¶22 On appeal, Wilson argues that we should set aside LIRC's decision finding her ineligible beginning in week twenty-one of 2020 because her PUA claims were not processed in compliance with "federal guidance," particularly because all her claims were resolved in one proceeding. She further contends that the claim filing process has been confusing and frustrating, and she argues that the hearing notice she received was insufficient to alert her to the possibility that her eligibility for PUA would be completely resolved in one proceeding, and the ALJ should have done more to help her understand what she needed to say to have her claim approved.

¶23 To be eligible for PUA, among other requirements, an individual must have been unemployed, partially unemployed, or unable or unavailable to work as a result of one or more of the following reasons:

> (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;
>
> (bb) a member of the individual's household has been diagnosed with COVID-19;
>
> (cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;
>
> (dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;
>
> (ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance[.]

15 U.S.C. § 9021(a)(3)(A)(ii)(I). Under sub. (kk), the Secretary of the United States Department of Labor approved the following additional criteria:

Self-employed individuals (including independent contractors and gig workers) who experienced a significant diminution of their customary or usual services because of the COVID-19 public health emergency, even absent a suspension of services, may self-certify under item (kk).

Unemployment Insurance Program Letter No. 16-20, Change 4, at I-8 (DOL Jan. 8, 2021).

¶24 Based on the facts developed by the ALJ at the hearing, LIRC found Wilson eligible for PUA benefits under sub. (ee) for the duration of the safer at home orders but ineligible under sub. (ff) or sub. (kk) after the safer at home orders ended. In particular, LIRC found that Wilson was not eligible under sub. (ff) because she was never advised by a doctor to quarantine and rather quarantined due to general concerns related to COVID-19, and LIRC further found

that Wilson was not eligible under sub. (kk) because she never attempted to return to driving for Lyft such that she can now claim that there was a diminution in the demand for her driving services.

¶25     We conclude that LIRC's findings of fact, on which its eligibility findings depend, are not supported by credible and substantial evidence because the facts pertaining to Wilson's eligibility beginning with week twenty-one of 2020 were not sufficiently developed by the ALJ at the hearing. *See* WIS. ADMIN. CODE § DWD 140.15(2) (stating that the ALJ has a "responsibility to develop the facts"). "For PUA cases, this responsibility includes securing all facts relating to potential PUA eligibility from the beginning week of issue through the date of the administrative hearing." *Celestine Patten*, Hearing Nos. 21602443MD and 21602518MD (LIRC June 30, 2021).

¶26     The record demonstrates that Wilson completed several applications for PUA benefits, that Wilson selected several categories of potential eligibility in those applications, and the hearing notice included broad language stating that Wilson's eligibility generally would be considered at the hearing. Yet, the ALJ failed to sufficiently explore Wilson's eligibility for PUA when the ALJ had the obligation to do so.

¶27     LIRC argues that we should uphold its order finding Wilson ineligible beginning in week twenty-one of 2020 because it considered Wilson's eligibility under all the reasons selected in her applications, and LIRC maintains that Wilson's decision to quarantine and not return to driving for Lyft amounts to nothing more than a general concern for her health in the face of COVID-19. LIRC further argues that the other reasons for PUA that Wilson selected in her subsequent applications "simply do not apply" to Wilson.

12

¶28    We reject LIRC's argument because of the lack of factual development by the ALJ at Wilson's hearing to support consideration of all the categories of eligibility selected by Wilson.  Indeed, the record supports that Wilson was never specifically questioned about the additional reasons she selected in her applications and those applications were never referenced at the hearing.  Moreover, the ALJ never questioned Wilson whether she understood that she needed specific advice from a doctor to quarantine in order to be eligible under sub. (ff), and the ALJ never questioned Wilson as to why she did not return to driving for Lyft.  The ALJ simply established that Wilson did not have an order from her doctor and had not returned to driving.  Without more, the record does not contain the factual support needed to sustain LIRC's order finding Wilson ineligible for PUA beginning in week twenty-one of 2020.

¶29    Accordingly, we affirm that part of the circuit court's order affirming LIRC as to weeks thirteen through twenty of 2020, and we reverse and remand for further factual development of Wilson's eligibility for PUA beginning in week twenty-one of 2020.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.